[No. 53370-3-I. Division One. May 23, 2005.]

LOUIS KELLER ET AL., *Appellants*, v. SIXTY-01 ASSOCIATES OF APARTMENT OWNERS, *Respondent*.

*Robert G. Nylander, Jr.* (of *Cutler & Nylander*), for appellants.

*H. Troy Romero* (of *Romero & Montague, P.S.*), for respondent.

¶1 APPELWICK, J. — In 1992, the members of the Sixty-01 Associates of Apartment Owners voted to change the assessment method for allocating common expenses of the condominium complex. In 1999, after deciding that the vote to change the assessment method violated Washington condominium law and Sixty-01's own Declaration, the Board of Sixty-01 revoked the 1992 amendment and returned to the prior assessment method. Appellants Louis and Betty Keller, members of Sixty-01, filed a complaint regarding this revocation. Sixty-01 claimed the 1992 amendment was void ab initio due to its improper adoption. We hold that the 1992 amendment was properly adopted as to the percentage of owners voting for it, and whether the consent of the requisite number of institutional first mortgage holders was received is a genuine issue of material fact. We thus reverse the summary judgment, the CR 12(b)(6) dismissal, and the grant of attorney fees to Sixty-01. We grant costs on appeal to the Kellers and remand for further proceedings.

## FACTS

¶2 Sixty-01 Associates of Apartment Owners (Sixty-01) is a group of approximately 770 homeowners who live in a condominium complex in Redmond. The governing document of Sixty-01 is the Declaration of Covenants (Declaration), which was recorded in 1978. The Declaration governs many aspects of Sixty-01's existence, including the method by which common expenses are assessed against each homeowner. From 1978 until 1992, these expenses were allocated according to each condominium's percentage of

undivided interest in the common areas and facilities. This allocation was in accordance with the governing statute for condominiums at the time, the Horizontal Property Regimes Act (HPRA), chapter 64.32 RCW, which provided that the undivided interest was to be determined by each unit's value relative to the value of the entire property. RCW 64.32.050(1), .900.

¶3 In 1989, the Condominium Act, chapter 64.34 RCW, was enacted. RCW 64.34.900. The Condominium Act governs all condominiums created after July 1, 1990. RCW 64.34.010(1). Certain provisions of the Condominium Act also apply to condominiums created under HPRA, if not inconsistent with the condominium's declaration, and are at issue here. The Condominium Act permits common area expenses to be allocated on a basis other than relative value. RCW 64.34.224. In response to the Condominium Act, Sixty-01 homeowners in 1992 voted to amend the Declaration to change the method for allocating common expenses. This amendment (the 1992 amendment) deleted part of Section 18.3 and added Section 18.11 to the Declaration. Section 18.11 provided that "expenses will be allocated against the basic unit types in a direct relationship to actual expenses incurred and benefits received by those unit types." The 1992 amendment also delineated the percentage value for each type of home for the purposes of determining each type of common expense allocation. The specifics of the 1992 amendment are not challenged here, only the procedures for its adoption and revocation.

¶4 In the late 1990s, Sixty-01's Board of Directors (the Board) became concerned that the 1992 amendment might be invalid because Sixty-01 had not relied on the correct provision of the declaration to determine the percentage of votes necessary to pass the 1992 amendment. The record reflects that the 1992 amendment was adopted by at least 60 percent of the homeowners. The record does not reflect approval from institutional first mortgage holders. The Board was concerned that Sixty-01 had not received 100 percent of homeowner approval or 100 percent institutional

first mortgage holder approval for the change. The Board felt that this approval was required by HPRA and by Sixty-01's own Declaration. In 1999, after consulting with a condominium law attorney whose opinion confirmed their concerns, the Board, not the homeowners, voted to revoke the 1992 amendment and reinstated the prior formula for assessing common expenses.

¶5 Louis and Betty Keller filed this lawsuit in 2002, alleging that the 1999 revocation violated Sixty-01's duties to the homeowners, and claimed damages with respect to the higher common area expenses allocated to them after the 1999 revocation. Sixty-01 moved for partial summary judgment, arguing that the 1992 amendment was void ab initio because it did not receive 100 percent homeowner approval or the required percentage of institutional first mortgage holder approval. The trial court granted Sixty-01's summary judgment motion in part, ruling that because the 1992 amendment was improperly adopted, it was void ab initio. But the trial court denied the motion "with respect to the issue of the procedural propriety of the Board's not getting owner approval of its 1999 actions." However, the trial court later granted Sixty-01's CR 12(b)(6) motion to dismiss. The trial court also granted Sixty-01's request for attorney fees. The Kellers appeal.

## DISCUSSION

I. Time Bar to Action

¶6 The Kellers argue that the 1999 revocation was time-barred. They contend that RCW 64.34.264(2) prevents challenges to an amendment from being brought more than one year after the amendment is recorded. They also claim that the general six-year limitation for claims of breach of written contracts in RCW 4.16.040(1), applies to bar the 1999 revocation.

■ ■ ¶7 RCW 64.34.264 is inapplicable to the 1999 revocation. The provisions of the Condominium Act that apply to HPRA properties are listed in RCW 64.34.010(1).

This list does not include RCW 64.34.264. HPRA, under which Sixty-01 was organized, does not contain such a time limitation.

¶8 The Kellers' argument that the 1999 revocation was time barred rests on the assertion that condominium declarations are contracts and that an allegedly illegitimate amendment is properly considered a breach of contract. The Kellers rely on *Hartstene Pointe Maintenance Ass'n v. Diehl*, 95 Wn. App. 339, 979 P.2d 854 (1999). Because the Declaration was a contract, the Kellers argue, the 1999 revocation was barred under the six-year statute of limitations contained in RCW 4.16.040(1). On the record and briefing before us, we decline to reach the issue of whether the Board's 1999 revocation was time-barred by RCW 4.16.040(1).

¶9 As discussed below, the trial court must determine on remand whether the 1992 amendment was properly adopted. If it was, this issue is moot. If the 1992 amendment was not properly adopted, the trial court must determine whether the purported amendment was void or merely voidable. If it was void, the Board's action in 1999 is inconsequential and this issue is moot. If the trial court determines that the purported amendment was voidable, it may consider whether RCW 4.16.040(1) applies as well as whether the Board's procedures were proper.

II. Summary Judgment Motion

¶10 The Kellers argue that partial summary judgment for Sixty-01 was improper because amendment of the Declaration was not necessary to change the allocation formula. This, they claim, is because the relevant provision in the Condominium Act took effect automatically. Even if an amendment was necessary, they contend, the 1992 amendment was properly adopted. We hold that while amendment was necessary, there is a genuine issue of material fact as to whether the amendment was properly adopted; thus, we reverse the grant of partial summary judgment.

¶11 Summary judgment is appropriate "where the pleadings, depositions, affidavits and admissions on file show that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law." *Youngblood v. Schireman*, 53 Wn. App. 95, 99, 765 P.2d 1312 (1988). The appellate court must review the summary judgment de novo, making the same inquiry as the trial court. *Youngblood*, 53 Wn. App. at 99. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Youngblood*, 53 Wn. App. at 99. Questions of law are reviewed de novo. *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 813, 854 P.2d 1072 (1993).

## A. Applicability of RCW 64.34.360(3)

¶12 The Kellers argue that certain provisions of the Condominium Act are retroactively applicable to condominiums that, like Sixty-01, are formed under HPRA. Specifically, the Kellers claim that RCW 64.34.360(3) is automatically applicable to Sixty-01, making it unnecessary to amend the Declaration to take advantage of its provisions.

■ ¶13 The Kellers are correct in noting that the Condominium Act has some application to HPRA condominiums. RCW 64.34.010(1) lists several of the Condominium Act's sections and provides that those sections "apply to all condominiums created in this state before July 1, 1990; but those sections apply only with respect to events and circumstances occurring after July 1, 1990." One of the sections listed as retroactively applicable is RCW 64.34.360(3), which provides, in pertinent part:

(3) To the extent required by the declaration:

(a) Any common expense associated with the operation, maintenance, repair, or replacement of a limited common element shall be paid by the owner of or assessed against the units to which that limited common element is assigned, equally, or in any other proportion that the declaration provides;

(b) Any common expense or portion thereof benefiting fewer than all of the units must be assessed exclusively against the units benefited.

Thus, RCW 64.34.360(3) allowed pre-1990 condominiums to assess common area expenses based on the units that used the common element. The new statute effectively broke the link between percentage of undivided interest and common area assessments.

¶14 This provision of the Condominium Act represented a significant change from prior law and from Sixty-01's pre-1992 Declaration. Under HPRA, which applies to condominiums created before July 1, 1990, percentage of undivided interest and common area assessments were linked. HPRA provides that "[t]he common profits of the property shall be distributed among, and the common expenses shall be charged to, the apartment owners according to the percentage of the undivided interest in the common areas and facilities." RCW 64.32.080. Thus, under HPRA, percentage of undivided interest and common expenses were linked—one could not be changed without the other being changed as well. To comply with HPRA, the pre-1992 Declaration provided that monthly assessments for common expenses were assessed in proportion to the homeowner's percentage of common interest in the common areas.

¶15 Because RCW 64.34.360(3) was inconsistent with the provisions of the Declaration, an amendment was necessary to implement its provisions. After listing the sections that are applicable to pre-1990 condominiums, the Condominium Act states that the listed retroactive sections "apply only with respect to events and circumstances occurring after July 1, 1990, and do not invalidate or supersede existing, inconsistent provisions of the declaration, bylaws, or survey maps or plans of those condominiums." RCW 64.34.010(1). We interpret this provision to require an amendment to the declaration when the applicable statutory provision is inconsistent with the existing declaration and the homeowners wish to implement the statutory

provision. As noted above, RCW 64.34.360(3) was inconsistent with HPRA and with Sixty-01's existing Declaration because it required common expenses to be assessed according to units benefited. An amendment to the Declaration was thus necessary in order to allow Sixty-01 to take advantage of RCW 64.34.360(3).

 ¶16 The Condominium Act provides guidelines for how such amendments must be enacted:

> The provisions of chapter 64.32 RCW do not apply to condominiums created after July 1, 1990, and do not invalidate any amendment to the declaration, bylaws, and survey maps and plans of any condominium created before July 1, 1990, if the amendment would be permitted by this chapter. The amendment must be adopted in conformity with the procedures and requirements specified by those instruments and by chapter 64.32 RCW.

RCW 64.34.010(2). Although RCW 64.34.010(1) states that only certain sections of the Condominium Act are applicable to pre-1990 condominiums, we interpret RCW 64.34.010(2) to require that any amendment to the declaration of a HPRA condominium must conform with the requirements of HPRA and the declaration. This interpretation is in accordance with the rule that " '[s]tatutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous.' " *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (internal quotation marks omitted) (quoting *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 963, 977 P.2d 554 (1999)). Therefore, an amendment to the Declaration was necessary to take advantage of RCW 64.34.360(3), and such an amendment must have been adopted in conformity with HPRA and with the Declaration.

B. Percentage of Homeowner Approval

¶17 Sixty-01 decided to take advantage of the provisions of the Condominium Act. The record reflects that 60 percent homeowner approval was obtained. Sixty-01 claims that the 1992 amendment was void ab initio because the Decla-

ration and HPRA required 100 percent homeowner approval, and less than 100 percent of homeowners approved the amendment. The Kellers assert that the 60 percent homeowner approval that the 1992 amendment received was sufficient under Section 28.1 of the Declaration to effect an amendment to the Declaration. The Kellers claim that the 1992 amendment did not alter the value of the homes or the percentage of undivided interest, and thus only 60 percent homeowner approval was required. We agree.

■■ ¶18 Although chapter 64.34 RCW allows pre-1990 condominiums to amend their declarations with respect to common expense allocation, it requires that the amendment be adopted in conformity with the requirements of chapter 64.32 RCW. RCW 64.34.010(2). An amendment to a declaration that alters the percentage of undivided interest in the common areas requires unanimous consent of the homeowners. RCW 64.32.090(13). Any other amendment requires merely 60 percent homeowner approval. RCW 64.32.090(13). Similarly, Section 28.1 of the Declaration requires unanimous consent of homeowners for "an amendment altering the value of the property and of each apartment or the percentages of undivided interest in the common areas and facilities." Except for a few significant changes requiring unanimous approval, all other amendments require 60 percent homeowner approval and compliance with Section 28.2.

¶19 Here, only 60 percent homeowner approval was required. The 1992 amendment changed the formula for allocating common expenses, but it did not change the undivided interests in the common areas and facilities— these percentages remained the same. This change in the common expense allocation without a change in the percentage of undivided interest was allowed by the decoupling of those two elements in RCW 64.34.360(3). Thus, as the 1992 amendment did not alter the values or percentages of undivided interest in the condominiums, it required only 60 percent homeowner approval under the Declaration.

¶20 The parties do not dispute that at least 60 percent of Sixty-01 homeowners voted to approve the 1992 amendment. Thus, the requisite percentage of homeowner approval was received, and the 1992 amendment was not void ab initio due to an insufficient percentage of homeowner approval.

C. Percentage of Institutional First Mortgage Holder Approval

■ ¶21 Sixty-01 also asserts that the 1992 amendment is void ab initio because it did not receive the required percentage of institutional first mortgage holder approval, as set forth in Sixty-01's Declaration. Specifically, Sixty-01 claims that 100 percent institutional first mortgage holder approval was required because the homeowners' interests in the common areas were altered. Alternatively, Sixty-01 argues, 75 percent institutional first mortgage holder approval was required, as the amendment was material. Sixty-01 contends that neither 100 percent nor 75 percent institutional first mortgage holder approval was obtained. The Kellers claim that the 1992 amendment did not require any institutional first mortgage holder approval because it neither altered the percentage of undivided interest nor was material. We hold that there are genuine issues of material fact as to whether the 1992 amendment was material to the institutional first mortgage holders and, thus, whether 75 percent approval was required. Summary judgment was therefore inappropriate.

¶22 The Declaration sets forth the standards for when approval of institutional first mortgage holders is required. Section 28.2 of the Declaration states that

> the prior written approval of each institutional holder of a first mortgage will be required for any amendment that would change the percentages of undivided interest in the common areas and facilities of the apartment owners . . . and the prior written approval of institutions holding 75 [percent] of the first mortgages that are held by institutional holders on apartments in the condominium shall be required for any other material amendment.

As noted above, the 1992 amendment did not change the percentages of undivided interest in the common areas. Thus, 100 percent approval of institutional first mortgage holders was not required.

¶23 Whether 75 percent institutional first mortgage holder approval was required depends on whether the 1992 amendment was an amendment that was material to the first institutional mortgage holders. Section 28.2 requires 75 percent approval for "any other material amendment." Read in a commonsense way and in the context of the entire section, this means that 75 percent approval is required for any amendment that is material to the mortgage holder. It would be nonsensical to read the section to require 75 percent lender approval for an amendment that was material to the homeowners but was not material or significant to the institutional lenders. Thus, we conclude that only an amendment material to the lender requires 75 percent approval.

¶24 But it has not been established whether the 1992 amendment was material to the first institutional mortgage holders. Therefore, a genuine issue of material fact exists as to whether the 1992 amendment was a material amendment in the eyes of any institutional first mortgage holders.

¶25 Further, even if the 1992 amendment was material, there are genuine issues of material fact as to the number of institutional first mortgage holders on the Sixty-01 condominiums at the time of the 1992 amendment and as to whether 75 percent of them approved the 1992 amendment. Other than a condominium rider that indicates that the Kellers' condominium has a first mortgage holder, there is nothing in the record that shows that any other mortgage holders exist. In addition, there is nothing in the record that shows whether 75 percent of the institutional first mortgage holders approved the 1992 amendment. Michael Hill, a Sixty-01 board member, stated in a declaration that "[n]owhere in Sixty-01's business records are there documents indicating that Sixty-01's 1992 Amendment to its Declaration was approved by even 75 [percent] of the

institutions holding first mortgages on any of the apartments at the time." However, for summary judgment purposes, this does not establish that 75 percent approval was not obtained, only that Sixty-01's business records do not indicate that 75 percent approval was obtained.

¶26 The Kellers argue that institutional first mortgage holders had to request notice to trigger the provisions of Section 28.2. We disagree.

¶27 The Kellers point to Section 15.2 of the Declaration, which provides that "[a]ny mortgagee of an apartment may file with the secretary of the Board a written request that it be given copies of notices." Section 15.2 further provides that those mortgagees that file requests be given notice of certain Sixty-01 events and meetings. Section 15.2 concludes by stating:

> Institutional holder of first mortgages on apartments shall be entitled to notices under Article 24 (Damages and Repair of Damage to Property) and Article 25 (Condemnation) irrespective of whether they have filed requests for notices. The provisions of this Section 15.2 shall prevail over any inconsistent or contrary provisions in this Declaration or in the Articles or Bylaws.

The Kellers claim that Sixty-01's challenge must fail because it has not proved any mortgagees requested notice. Section 15.2 applies to notice to mortgagees for items and actions completely separate from mortgagee approval under Section 28.2. Nothing in Section 15.2 indicates that it is meant to apply to amendments to the Declaration, the subject of Section 28.2.

¶28 The Kellers also assert that the Condominium Act's definition of "eligible mortgagee" includes only those lenders that have requested notice of actions that require the lenders' consent, and that this definition retroactively applies to Sixty-01. We disagree. The Kellers' assessment of the term "eligible mortgagee" is correct: an "eligible mortgagee" is defined in the Condominium Act as "the holder of a mortgage on a unit that has filed with the

secretary of the association a written request that it be given copies of notices of any action by the association that requires the consent of mortgagees." RCW 64.34.020(18). However, RCW 64.34.010(1) makes the definitions of RCW 64.34.020 applicable to condominiums created before 1990 only to the extent necessary in construing the other sections listed as applicable. The term "eligible mortgagee" is not used in RCW 64.34.360(3) and therefore is not necessary to construe RCW 64.34.360(3). Finally, the definition of "eligible mortgagee" is not used in the Declaration and is inconsistent with the definition of "institutional holder" found in the Declaration.[1] Thus, for Sixty-01 to use the RCW 64.34.020(18) definition of "eligible mortgagee," it would have to properly amend the Declaration. RCW 64.34.010(2). The Kellers have presented no evidence showing that Sixty-01 amended the Declaration to incorporate the definition of "eligible mortgagee."

¶29 Thus, there are genuine issues of material fact as to whether the 1992 amendment was material, whether and how many first institutional mortgage holders existed at the time of the 1992 amendment, and whether 75 percent of those holders approved the amendment. Summary judgment was therefore inappropriate.

III. Abrogation

¶30 The Kellers contend that the Board improperly abrogated the 1992 amendment. To resolve this issue, several questions must be answered. First, was the 1992 amendment properly adopted? If it was not, was it void ab initio, or merely voidable? If it was voidable, was the action barred by the statute of limitations or equitable principles, and did the Board follow the proper procedures in voiding it in the 1999 revocation? Because we find that there is a genuine issue of material fact as to whether the 1992

---

[1] An "institutional holder" is "a mortgagee that is a bank, savings and loan association, established mortgage company, or other entity chartered under federal or state laws, any corporation in the business of owning or servicing real estate mortgages, or insurance company, or any federal or state agency." This is inconsistent with the more narrow definition of "eligible mortgagee."

amendment was properly adopted, we cannot reach the remaining issues. We leave these determinations to the trial court on remand.

## IV. Other Issues

¶31 As we reverse the grant of summary judgment, we also reverse the grant of the CR 12(b)(6) motion and the award of attorney fees. We need not reach the other issues raised in this appeal.

¶32 We award the Kellers their costs on appeal under RAP 14.2, as they are the substantially prevailing party. But, we do not award the Kellers attorney fees. The Kellers did not request attorney fees on appeal either in their briefs or at oral argument, as required by RAP 18.1. In fact, they argued that attorney fees should not be awarded.

¶33 Reversed and remanded.

Cox, C.J., and BAKER, J., concur.