127 P.3d 762 (2006)
131 Wash.App. 353
Vladimir and Elizabeth BOGOMOLOV, husband and wife, and the marital community composed thereof; Victor and Fortunee Cohen, husband and wife, and the marital community composed thereof; Larrie and Marilyn Elhart, husband and wife, and the marital community composed thereof; Lisa Johnson; James and Marjorie Kimbrough, husband and wife, and the marital community composed thereof; Marjorie Michael; Kay Siefken; Dennis Thornton; and William and Jean Thornton, husband and wife, and the marital community composed thereof, Respondents,
v.
LAKE VILLAS CONDOMINIUM ASSOCIATION OF APARTMENT OWNERS, a Washington non-profit corporation; Matthew Bratlien, Steve Lanman; Hazel Odom, Betty Wilder, Defendants,
Gary and Linda Baermann, husband and wife, and the marital community composed thereof; Jill Boileau; Rick Carrol; William and Kellie Jones, husband and wife, and the marital community composed thereof; Paul and Susanne Walker, husband and wife, and the marital community composed thereof; and Jane and John Does A-Z, Appellants.
No. 55505-7-I.
Court of Appeals of Washington, Division 1.
January 30, 2006.
*763 Nathan James Neiman, Attorney at Law, Bellevue, WA, for Appellant.
Christopher Ian Brain, Paul W. Moomaw, Tousley Brain & Stephens PLLC, Seattle, WA, for Respondent.
APPELWICK, A.C.J.
¶ 1 Lake Villas Condominium Association amended its declaration to allow for construction of a new boat dock with 16 boat slips and for assignment of these new boat slips under 99-year leases to certain condominium apartment owners. The association received a 60 percent vote from condominium owners to approve the amendment. After finding that the condominium declaration required a unanimous vote for such amendments the trial court invalidated the amendment.
¶ 2 We hold that the construction of the dock and boat slips was to occur on condominium common areas. Under the terms of the association's declaration, the assignment of these new boat slips under 99-year leases to the exclusive use of individual owners effectively converted common areas to limited common areas. This necessarily changed the values and percentages of ownership of the owners. These changes and the proposed amendment authorizing them required unanimous consent. The amendment was not properly adopted. We affirm the trial court.

FACTS
¶ 3 Lake Villas is a residential condominium with 60 units located on the shores of Lake Sammamish within the corporate boundaries of the city of Redmond, Washington. The land was originally deeded by the State to an individual owner in 1917. In 1975, the land, along with its proposed buildings and a dock with 24 boat slips, was submitted as a condominium by the execution and recording of the Declaration of Covenants, Conditions, Restrictions and Reservations for Lake Villas (Declaration). The Declaration, with a survey map and plans, was filed in King County. The Declaration and survey provided for the construction of buildings, a dock, and 24 boat slips.

The 1975 Declaration
¶ 4 The Declaration contains the legal description of Lake Villas' land, and its proposed improvements, Section 1 of the Declaration states that the land includes "Second[-]Class shore lands adjoining." The Declaration describes three types of property: apartments, common areas and limited common areas. No party asserts *764 the dock and slips proposed to be built are apartments so we will not be concerned with that definition. Section 5 of the Declaration describes eleven types of common areas, including "[t]he land above-described," "lawns, landscaped areas and walkways which surround and provide access to the buildings or are used for recreational purposes," and "[a]ll other parts of the property ... normally in common use." Section 6 also defines limited common areas as those common areas which are "reserved for the exclusive use of the apartments to which they are assigned, to which apartment there is hereby reserved an exclusive easement for the use thereof."
¶ 5 Section 6(d) of the Declaration further provides that "[a]ll the boat docking spaces shown in the Survey Map and Plans and designated by numbers or letters are considered limited common areas in that the exclusive use thereof may be assigned to particular apartments." The original 24 boat slips constructed pursuant to the Declaration and Survey are owned by individual condominium apartment owners as limited common areas.
¶ 6 Under the Declaration, all fee owners and contract purchasers of apartments are considered apartment owners and members of the Lake Villas Condominium Association (Association). For purposes of voting and payment of fees for condominium upkeep, each apartment is assigned a value and percentage of undivided interest in common areas, along with each apartment's interest in limited common areas. Section 7 of the Declaration provides that "[t]he total percentage of any apartment will be the combined percentages of the apartment and the open parking spaces and dock spaces assigned to it, if any." These percentages and values are outlined in Schedule A to the Declaration, and include the values of individual dock spaces. Schedule A reflects that dock spaces 1-18 have a value of .035 percent, and dock spaces 19-24 have a value of .06 percent. Section 11(b) of the Declaration further provides that the aggregate number of votes of all owners in Lake Villas is 100 votes, and that the total number of votes available to owners is "equal to the percentage of undivided interest in the common areas and facilities appertaining to such apartment."
¶ 7 Section 28(a) states that it may be amended at Lake Villas Condominium Association meetings "if at least 60 [percent] of all of the owners vote for such amendment." However, this section also provides that "[a]ny decisions changing the value and percentage of interest expressed herein" require the consent of the apartment owners as provided in chapter 64.32 RCW, "or if the Act does not so provide or is inapplicable, shall require unanimous consent of owners and their mortgagees." The Lake Villas Bylaws (Bylaws) similarly provide that the percentages of undivided interest in the common areas may only be altered by amendment of the Declaration.

The 2003 Amendments to the Declaration
¶ 8 In 2003, individual Lake Villas apartment owners (the defendants below, hereinafter Appellants) sought to amend the Declaration to grant to the Association the authority to construct and lease to Association members up to sixteen (16) new boat slips. The owners who wanted to lease the new boat slips would pay for the construction of the proposed dock and slips.
¶ 9 The amendment contained a project design for the proposed dock to be added onto the existing dock. Subsequent letters between Association members regarding communications with the City of Redmond and the Army Corps of Engineers confirm that the proposed dock would be an addition to the existing dock.
¶ 10 The proposed amendment provided that the new slips would be owned by the Association, but rented to individual apartment owners under 99-year leases. The amendment also provided that once the slips were constructed, they and their leases would be transferable by the unit owner to either a buyer of the unit or to another unit owner in Lake Villas. The proposed lease agreement stated that annual rent for the slips would be calculated based on the same cost to owners of existing slips, or .035 percent of the annual budget for 16-foot boat slips and .06 percent of the annual budget for 24-foot boat slips. At a meeting on the *765 amendment, 60 percent of the owners voted to approve it.
¶ 11 Thereafter, a separate group of Lake Villas apartment owners (the plaintiffs below, hereinafter Respondents) brought a complaint objecting to the amendment. Respondents primarily argued that the new boat slips would expand the limited common areas of Lake Villas and change the value designations and percentages of ownership in the common areas as set forth in the Declaration. Therefore, Respondents argued, the amendment required the unanimous consent of all condominium apartment owners under either the Declaration or chapter 64.32 RCW. Respondents requested the amendment be invalidated.[1] Respondents moved for summary judgment.
¶ 12 Appellants also moved for summary judgment, arguing that Respondents could not illustrate that the proposed dock would be constructed either on property owned by Lake Villas or on existing common areas designated in the Declaration and Survey. Appellants additionally argued that the proposed construction and leasing were permitted under the Declaration, Bylaws, and Association Rules and Regulations (Association Rules); and that lease of the slips would not alter the values and interests reflected in the Declaration. Therefore, unanimous consent was not required.
¶ 13 The trial court granted summary judgment to the Respondents, on the following legal issues:
a. The legal description for the Lake Villas Condominiums properly references second[-]class shorelands, which is the proper classification at the time the State conveyed the same in 1917.
b. The second[-]class shorelands are part of the real property classified as common areas in Section 5(2)(a) of the Declaration.
c. The existing dock, except for the individual boat docking spaces, is a common area.
d. The existing boat docking spaces are limited common areas pursuant to Section 6(d) of the Declaration.
e. The proposed addition of up to 16 new boat docking spaces would be an expansion of the limited common areas which would require a change in both the "value" designations and percentages of ownership in common areas as set forth in Schedule A and Section 7 of the Declaration.
f. Section 28 of the Declaration, as well as RCW 64.32.090(13), requires unanimous consent of all Lake Villas Condominium apartment unit owners for the proposed dock expansion.
¶ 14 After Appellants' motion for reconsideration, the court clarified that the proposed amendment was void and reaffirmed the ruling on these issues made in its first order. The court then denied the remainder of Respondents' claims. Appellants appealed.[2]
¶ 15 We apply the usual standard of de novo review for summary judgments, reviewing the facts and all reasonable inferences in a light most favorable to the non-moving party. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). We also briefly note that although not all defendants at trial appealed, the remaining defendants are bound the trial court's decision in this case. See, e.g., Kemmer v. Keiski, 116 Wash.App. 924, 932, 68 P.3d 1138 (2003); RAP 5.2.

DISCUSSION

I. Classification of Lake Villas Shorelands

¶ 16 Appellants argue that the court's phrase in its ruling on issue (a) "which is the proper classification at the time the State conveyed the same in 1917," is ambiguous because it does not identify whether it *766 refers to the existing dock area or the proposed dock area. They argue that there is no evidence to show where the farthest property line is for the shore either in 1917 or today. They also argue that Lake Villas' actual ownership of the shorelands has been impacted because the City of Redmond boundaries have changed and the shorelands are now classified as first-class shorelands, rather than second-class shorelands, under chapter 79.90 RCW. The right of ownership in second-class shorelands sold by the State to private owners is subject to the right of the State to later change the farthest, outer or waterward boundary of the shorelands, by fixing the inner harbor line, should the land come within the limits of a city and become first-class shorelands. State v. Sturtevant, 76 Wash. 158, 166, 135 P. 1035 (1913). Appellants assert summary judgment was inappropriate because it is unclear who now owns the shorelands.
¶ 17 The deed clearly states that second-class shorelands were originally conveyed by the State to the original owners of the land in 1917. And, the State granted these first owners of the second-class shorelands, or riparian owners, the right of all land lying between the line of high water on the lake and the line of navigability. See Sturtevant, 76 Wash. at 162, 167, 135 P. 1035 (citing Laws of 1897, § 4, p. 230). Thus, the court did not err in ruling that the original legal description of the land included second-class shorelands. Further, even if an issue of fact exists regarding whether the proposed dock would cross the line of navigability for second-class shorelands, or an inner harbor line later established by the State when the lands were reclassified as first-class shorelands pursuant to chapter 79.90 RCW, this fact is unnecessary to the outcome of this case. As discussed below, the dock construction was to substantially occur on Lake Villas' property classified as "common areas." And, if some portion of the project was to be built on land not owned by the Association, it would be either attached to a common area or require access from a common area, but would neither be built with common funds nor provide a common benefit to Association members. Under either circumstance, the proposed dock was subject to the provisions of the Declaration.

II. Lake Villas Common Areas

¶ 18 The proposed amendment sent to Lake Villas' apartment owners contained a project design for the new dock with three options for construction. All three options indicated that the new dock would be added onto the existing dock. Subsequent letters between Association members regarding communications with the City of Redmond and the Army Corps of Engineers also indicate that the proposed dock would be an addition to the existing dock. All of the plans anticipated that the proposed dock would be constructed within Lake Villas' northern and southern boundary lines, which extend from the land to the furthest waterward boundary. Thus, even if the dock crossed the line of navigability or the inner harbor line, the construction was to substantially occur on Lake Villas' property and could not occur beyond the line without connection to Lake Villas' common area.
¶ 19 Appellants nonetheless argue that the property on which the dock was to be built was not part of the common areas and was not subject to the Declaration's limitations. Appellants argue that "common areas" are to be defined only as provided in RCW 64.32.010(6), and argue that the term "land" in the statute is used in a limited sense and does not incorporate all the improvements built on the lands, the walkways, or other open areas. However, Section 5 of the Declaration provides that common areas include "[t]hose specified in the Act unless otherwise provided for herein as limited common areas or part of the apartments." (emphasis added). The Declaration then lists several types of common areas which clearly include the shorelands, access to the shorelands, and the existing docks.
¶ 20 When interpreting a document, the preferred interpretation gives meaning to all provisions and does not render some superfluous or meaningless. P.U.D. No. 1 v. Wash. Pub. Power Supply Sys., 104 Wash.2d 353, 373, 705 P.2d 1195, 713 P.2d 1109 (1985). Section 1 of the Declaration states that Lake Villas land includes "Second[-]Class shore *767 lands adjoining." Section 5 includes as common areas "[t]he land above-described," "lawns, landscaped areas and walkways which surround and provide access to the buildings or are used for recreational purposes," and "[a]ll other parts of the property... normally in common use." Appellants concede that the phrase "[a]ll other parts ... normally in common use" could be construed to include the existing docks. And, further emphasizing the common use of the dock the Association Rules provide that "[t]he dock area may be used for sunbathing, swimming, fishing, and general recreation."
¶ 21 The court did not err in ruling that the shorelands and the existing dock are common areas. Viewing the facts and reasonable inferences in a light most favorable to the Appellants, all the plans for the proposed dock and boat slips illustrate that the new dock would be built attached to the existing dock and in whole or part upon the shorelands of the Association, both which are common areas under the Declaration, and therefore would also be common area. To the extent that some portion of the dock might be built beyond property owned by the Association, i.e., not common area, the Board was only authorized to engage in such a project under Section 25 of the Declaration. As discussed below, the project was not to be built with Association funds nor did it confer a common benefit, and thus it did not meet Section 25's requirements.

III. Construction and Lease of Dock and Boat Slips

A. Dock and Slips as Expansion of Limited Common Areas

¶ 22 Appellants argue that even if the proposed dock would be constructed on common areas of Lake Villas' property, the trial court erred in concluding that the dock would be an expansion of the limited common areas.[3] Appellants first assert that because the Declaration refers only to the existing dock spaces identified in the Survey as limited common areas, these provisions are of no assistance in determining the characterization of the proposed new dock. Appellants give a tortured reading to the language of the Declaration.
¶ 23 The Declaration defines limited common areas as those areas "reserved for the exclusive use of the apartments to which they are assigned, to which apartment there is hereby reserved an exclusive easement for the use thereof." The Declaration further provides "[a]ll the boat docking spaces shown in the Survey Map and Plans and designated by numbers or letters are considered limited common areas in that the exclusive use thereof may be assigned to particular apartments." Thus, the Declaration does not provide that only the existing numbered boat slips are limited common areas, but rather explains why the existing boat slips qualify as limited common areas. The court did not err in making a ruling that the existing boat slips assigned to apartments are limited common areas.
¶ 24 Appellants further argue that the new dock spaces would not be an expansion of the limited common areas because the new dock would be owned by the Association and leased for 99 years to homeowners, and the Declaration authorizes the Board to acquire and hold property and to lease or rent such property for the benefit of Association. This argument is unpersuasive. Section 25 of the Declaration, cited by Appellants, provides that "[t]he Board may, from common funds of the Association, acquire and hold by nominee, in trust, or in the name of the Association, for the benefit of the owners, tangible and intangible personal property and real property and interests therein." (emphasis added). The proposed project here was not to be purchased from common funds. Rather, it was to be financed by the individual owners who wanted boat slips, built on or adjoining Lake Villas' common areas, and then rented under 99-year leases to individual apartment owners for their exclusive use and enjoyment to be tied to that apartment until transferred to another.
*768 ¶ 25 The term "owners" in the Declaration refers to the apartment owners collectively, not to some subset of owners. While the private financing of the boat slips and allocation of costs of the slips to selected unit owners may have achieved an option in which the Association bore no net cost or loss, there is no apparent economic benefit to all of the owners. The benefits appear to accrue solely to the apartment owners to whom the exclusive use leases were awarded. Section 25 of the Declaration does not authorize the Board to execute the proposal.
¶ 26 Appellants argue that the Declaration specifically provides that docking spaces may be owned by the Association and used by the Board. However, Section 6 of the Declaration actually provides:
[d]ock spaces not assigned to apartments and remaining in Declarant's ownership may by Declarant be assigned and deeded to the Owner's Association or to some party in trust therefor, to be common property to be utilized as determined by the Board in which event percentages for all apartments will be calculated as in Section 16(g) of this Declaration.

(Emphasis added).
¶ 27 Thus, Appellants ignore the fact that the new dock spaces as proposed, while purportedly to be owned by the Association, would not be common property as provided by this section of the Declaration. Rather, they would be leased to apartment owners for their exclusive use under the terms of the proposed lease. And, under the proposed lease, boat slip lease-holders would have the sole right to assign or sublet their lease to other unit owners, such that the boat slips would remain with individual apartments.
¶ 28 Appellants nonetheless argue that 99-year leases on the new boat slips are not the same as the fee interests in the existing boat slips, and thus could not be considered limited common areas. To support this argument, Appellants cite St. Francis Extended Health Care v. DSHS, 115 Wash.2d 690, 801 P.2d 212 (1990), and Duncan Crane Serv., Inc. v. State Dep't of Rev., 44 Wash.App. 684, 723 P.2d 480 (1986). These cases address improper taxation of property leases by treating them as purchases of such property, and are thus inapplicable.[4]
¶ 29 Appellants also cite several cases involving 99-year leases. However, none addresses the classification of leased property as either common areas or limited common areas pursuant to a condominium declaration. Rather, they involve the interpretation of lease rental contracts. See Berg v. Hudesman, 115 Wash.2d 657, 801 P.2d 222 (1990); McMillan v. Great N. Ry. Co., 45 Wash.2d 802, 278 P.2d 316 (1954); Hoffman v. Tieton View Cmty M.E. Church, 33 Wash.2d 716, 207 P.2d 699 (1949); Omicron Co. v. Hansen, 16 Wash.2d 362, 133 P.2d 505 (1943). Therefore, these cases are also inapplicable.[5]
¶ 30 The Declaration defines limited common areas as those areas "reserved for the exclusive use of the apartments to which they are assigned, to which apartment there is hereby reserved an exclusive easement for the use thereof." The Declaration does not restrict the means of reservation to those contained in a deed. Because the proposed 99-year leases of boat slips built on common *769 areas reserve exclusive rights of access to specific apartments, we conclude that the leases convert the proposed dock and boat slips, from common areas into limited common areas. The court did not err in ruling that the proposal would result in an expansion of limited common areas.

B. Value Designations and Percentages of Ownership

¶ 31 Appellants argue that even if the dock and boat slips qualify as an expansion of the limited common areas, the trial court erred in concluding that their addition would change the value designations of individual owners' units or percentages of ownership in the common areas. Appellants cite various portions of the Declaration and Bylaws, including Sections 15 and 20, which give the condominium Board "the exclusive authority to manage, maintain, repair and improve the common areas," and the authority to improve and alter common areas and limited common areas. However, Appellants fail to acknowledge that Section 8(j) provides that alterations and construction in common areas can only be done "after procedures required herein or by law." As common areas, the new dock and slips would be available for use by any of the owners. The proposed leases deny such use and instead reserves exclusive rights of use for specific apartment owners, consistent only with rights for use of limited common areas. None of the cited provisions allows the Board to convert common areas to limited common areas without unanimous approval as required by the Declaration.
¶ 32 Appellants assert that the values and percentages required by RCW 64.32.050(1), set forth in Schedule A of the Declaration, have not changed since they were established in 1975 and that the new dock and leased slips would not change the values. It appears that the Appellants have attempted to structure the proposed change to avoid creating limited common areas and to avoid triggering the unanimous approval requirements. The Appellants did not propose in the amendment to change the values stated in the Declaration. However, this fact is not determinative. Rather, it is the fact that newly constructed common areas proposed here are in reality being converted to limited common areas under the proposal that requires the values stated in the Declaration to be changed. Values set forth in the Declaration are to accurately reflect the unit and limited common area interests of the owners. That change requires unanimous consent of the owners.
¶ 33 Respondents cite cases from other jurisdictions that hold that an assignment of common area to one apartment in a condominium for the exclusive use of that apartment necessarily reduces the remaining apartments' percentages in common areas. See, e.g., Kaplan v. Boudreaux, 410 Mass. 435, 573 N.E.2d 495, 498-99, (1991)(amendment to condominium by-laws which granted the apartment owners exclusive and unrestricted use of the walkway leading to that unit constituted an alteration in the percentage interest of the owners in all common areas); Penney v. Ass'n of Apartment Owners of Hale Kaanapali, 70 Haw. 469, 776 P.2d 393, (1989)(the conversion of common areas to the exclusive use by one or fewer than all condominium apartment owners diminishes the common interest appurtenant to each apartment); Stuewe v. Lauletta, 93 Ill. App.3d 1029, 49 Ill.Dec. 494, 418 N.E.2d 138, 140 (1981)(assignment of a second parking space to an individual condominium apartment reduced the percentage of ownership in common areas of all other apartments which just had one parking space).
¶ 34 Other courts have similarly held that assignment of common areas to the exclusive use of one condominium apartment converts those areas to limited common areas and constitutes a taking of other individual owners' property. See, e.g., Makeever v. Lyle, 125 Ariz. 384, 609 P.2d 1084, 1088-89 (App. 1980) (building second story on roof of condominium converted a portion of the general common elements to one individual's exclusive and private use, control, and ownership and constituted a taking of the other individual owners' property); Grimes v. Moreland, 41 Ohio Misc. 69, 322 N.E.2d 699, 703, (1974) (fencing in common area for the use of one condominium owner constitutes a taking of property which is subject to the undivided interest of all unit owners).
*770 ¶ 35 Appellants argue that the condominium statutes of Arizona and Massachusetts have been amended subsequent to the court's decisions in Makeever and Kaplan. However, Appellants do not provide the entirety of these statutes on appeal and we need not review them. RAP 10.4(c). Further, the only statute cited in part by Appellants provides that "[t]he granting of an easement ... or allocation ... of limited common areas and facilities, or the withdrawal of a portion of the common areas and facilities, all as provided for in this subsection, shall not be deemed to affect or alter the undivided interest of any unit owner." Mass. Gen. Laws ch. 183A § 5(b)(1)(1998). This statute has no counterpart in chapter 64.32 RCW and is thus inapplicable.
¶ 36 The cases cited by Appellants do not support their argument that creation of the new boat dock and slips for the exclusive use of some apartment owners would not change the percentages and value designations. Liebler v. Point Loma Tennis Club, 40 Cal. App.4th 1600, 47 Cal.Rptr.2d 783, 786-88 (1995), addressed the authority of a condominium association to exclude a nonresident owner from the right to use common area where the condominium declaration required such rights to be assigned to the new tenant when the apartment was rented by the owner. That is not the situation presented here. Newport Condo. Ass'n v. Concord-Wisconsin, 205 Wis.2d 577, 556 N.W.2d 775, 778-779, (Ct.App.1996), held that changing a veranda from a common element to a limited common element did not reduce the individual condominium apartment owners' percentage of ownership interest in the veranda. However, the court also held that the amendments did reduce the value of the apartment owners' individual unit and increased the value of another unit. Newport, 556 N.W.2d at 779. Lake Barrington Shore Condominium Ten Homeowners Ass'n v. May, 196 Ill.App.3d 280, 143 Ill.Dec. 107, 553 N.E.2d 814, 815-16 (1990) held that a condominium apartment owner's construction of an 18-foot by 10-foot deck over a 10-foot by 10-foot patio was not a conversion of common area into limited common area. However, the court in Lake Barrington reached this conclusion because the condominium association could not produce any plans, surveys or other evidence that established that the owner's limited common area was contained by the existing 10-foot by 10-foot patio, and thus could not prove the owner encroached upon the common area and diminished its use. Lake Barrington, 143 Ill.Dec. 107, 553 N.E.2d at 816.
¶ 37 Appellants further cite Keller v. Sixty-01 Assocs. of Apartment Owners, 127 Wash.App. 614, 112 P.3d 544 (2005). Keller held that an amendment to a condominium declaration which changed the formula for allocating common expenses did not change the undivided interests in the common areas and facilities. The court noted that a change in the common expense allocation, without a change in the percentage of undivided interest, was specifically allowed by the decoupling of those two elements in RCW 64.34.360(3). Keller, 127 Wash.App. at 624-25, 112 P.3d 544. However, the Association here has not utilized chapter 64.34 RCW and does not seek to change the formula for allocating common expenses; rather it seeks to partition a portion of common area to construct a new dock and to grant long-term leases to boat slips on the dock for the exclusive use of certain apartment owners while operating under chapter 64.32 RCW. The holding in Keller is not dispositive.
¶ 38 Section 7 of the Declaration provides that "[t]he total percentage of any apartment will be the combined percentages of the apartment and the open parking spaces and dock spaces assigned to it, if any." Section 11(b) further provides that the total number of votes available to owners is "equal to the percentage of undivided interest in the common areas and facilities appertaining to such apartment." The proposed dock and boat slips were clearly intended to be built on common area, would limit the use of what would otherwise be common area, and would reserve exclusive rights to these common areas to specific apartment owners. We conclude this meets the definition of limited common area in the Declaration and constitutes assigning the dock space to the unit. The exclusive use of the boat slips would increase the overall value of units to which they were assigned and would necessarily change the percentages of ownership of the *771 owners of Lake Villas condominium in the common areas. The court did not err in so ruling.

C. Unanimous Consent Under Chapter 64.32 RCW or Declaration

¶ 39 Appellants finally argue that the trial court erred in concluding that unanimous consent was required under either chapter 64.32 RCW or the Declaration for the construction of the new dock and boat slips at Lake Villas.
¶ 40 RCW 64.32.090(13) provides:
The method by which the declaration may be amended, consistent with this chapter: PROVIDED, That not less than sixty percent of the apartment owners shall consent to any amendment except that any amendment altering the value of the property and of each apartment and the percentage of undivided interest in the common areas and facilities shall require the unanimous consent of the apartment owners.
¶ 41 Appellants argue that this statute specifies that each of the value of the property, the value of each apartment, and the percentage of undivided interest to be altered before unanimous consent is required, as opposed to being triggered by changes in less than all of them. Here, the addition of the new dock and slips would increase the value of the property. The conversion of this common area to limited common area would change the values of the apartments receiving exclusive use of the new limited common area and would change the percentages of undivided interests of all unit owners as a result, even if it did not change the actual value of each apartment.
¶ 42 However, if this court accepted Appellants' interpretation of the statute, the Declaration itself provides that unanimous consent is required in the present case. Section 28(a) of the Declaration provides:
Any decisions changing the values and percentage of interest expressed herein, shall require the consent of the apartment owners and their mortgagees as provided or required by the Act, as amended from time to time, or if the Act does not so provide or is inapplicable, shall require unanimous consent of owners and their mortgagees.
If RCW 64.32.090(13) requires three criteria, as Appellants argue, it is clear that the Declaration only requires two criteria. Thus, the Act is inapplicable and the provisions of the Declaration apply. As discussed above, the decision to add the proposed dock and boat slips would convert common area to limited common areas, and reserving exclusive use of the boat slips to particular units would add value to the units and would change both the values of those units and the percentages of common interest for all units from those expressed in the Declaration and Schedule A. We hold that under the terms of the Declaration, unanimous consent of all the apartment owners was required to pass an amendment that would permit the Association to construct a dock and boat slips on common areas, and to lease the boat slips exclusively for the use of specific apartment owners. The trial court did not err in voiding the amendment.
¶ 43 We affirm.[6]
AGID, J., concurs.
NOTES
[1] Respondents also argued five other claims not made on appeal: breach of declaration, bylaws, rules and regulations: RCW 64.32.250 (2nd Claim); failure to obtain unanimous consent: RCW 64.32.090(13) (3rd Claim); breach of fiduciary duties (4th Claim); ejectment from open parking spaces (5th Claim); and ejectment from boat docking spaces (6th Claim). Respondents sought injunctive relief and damages for their 2nd, 3rd, and 4th claims, and ejectment of "unknown residents" for their 5th and 6th claims.
[2] Both parties argue that chapter 64.32 RCW not chapter 64.34 RCW applies to this appeal. Thus, we do not consider the provisions of RCW 64.34.
[3] Chapter 64.32 RCW and the Declaration only recognize three types of property, apartments, limited common areas and common areas. Appellants do not claim the proposed dock and slips are apartments and argue they are not limited common areas. Necessarily, they must be common areas.
[4] Appellants also mistakenly cite the dissent in Juno By The Sea North Condominium Ass'n Inc. v. Manfredonia, 397 So.2d 297, 302-303 (Fla. Dist.Ct.App. 1980), for the proposition that a condominium association's assignment of parking spaces from common areas to a specific condominium unit did not convert them to limited common areas because they did not pass with that condominium unit when it sold. The majority decision in Juno actually affirmed the trial court's decision that the condominium association did not have authority to assign parking spaces from common areas to individual condominium apartments. Juno, 397 So.2d at 299.
[5] Appellants additionally argue that leases of common areas of condominiums must be treated as leases, citing McLendon v. Snowblaze Recreational Club Owners Ass'n, 84 Wash.App. 629, 929 P.2d 1140 (1997). In McLendon, the condominium declaration authorized the subdivision and combination of apartments, common areas, and facilities if approved by a 60 percent vote of all apartment owners. McLendon, 84 Wash.App. at 631, 929 P.2d 1140. Under this provision, the McLendon court found that a 63.45 percent vote approving board action in allowing an individual apartment owner to lease a common storage unit to convert to a bedroom was valid under the declaration. McLendon, 84 Wash.App. at 632, 929 P.2d 1140. No such provision exists in the Declaration at issue here. Thus, McLendon is inapplicable.
[6] Judge Faye Kennedy had indicated her concurrence prior to her death on September 16, 2005.