**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CITY BEVERAGES, LLC, DBA Olympic Eagle Distributing, a Missouri limited liability company with its principal place of business in Washington, | No.  23-35010 |
| | D.C. No. 3:22-cv-05756-DGE |
| Plaintiff-Appellee, | MEMORANDUM* |
| v. | |
| CROWN IMPORTS, LLC, DBA Constellation Brands Beer Division, a Delaware corporation with its principal place of business in Illinois; CONSTELLATION BRANDS, INC., a Delaware corporation with its principal place of business in New York, | |
| Defendants-Appellants. | |

Appeal from the United States District Court
for the Western District of Washington
David G. Estudillo, District Judge, Presiding

Argued and Submitted July 10, 2023
Seattle, Washington

Before:  GRABER, GOULD, and FRIEDLAND, Circuit Judges.

Defendant Crown Imports, LLC, a wholly owned subsidiary of Constellation

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Brands, Inc., is the exclusive brewer, marketer, and supplier of a portfolio of imported beer brands. Pursuant to a Distribution Agreement (the "Agreement"), Plaintiff City Beverages, LLC, d/b/a Olympic Eagle, has the right to distribute some of Defendant's products within a defined territory in the state of Washington.

We review for abuse of discretion the district court's grant of a preliminary injunction prohibiting Defendant from terminating the Agreement without cause and review de novo the underlying legal principles. Fyock v. Sunnyvale, 779 F.3d 991, 995 (9th Cir. 2015). We vacate the preliminary injunction on the ground that Plaintiff has not shown a likelihood of success on the merits, and we remand.

1. Plaintiff is unlikely to succeed on its claim under the Washington Wholesale Distributor/Supplier Equity Agreement Act (the "Wholesale Distributor Act" or the "Act"). Although the text of the Act does not expressly state that suppliers always have the right to terminate distribution agreements without cause, it clearly allows a supplier to contract for that right.

Under the Act, a supplier must give a distributor sixty days' notice before terminating a distribution agreement, with two exceptions that are not relevant here. Wash. Rev. Code § 19.126.040(2). That notice must state "all the reasons" for the termination, and the distributor must be given sixty days to "rectify any claimed deficiency." Id. If the supplier terminates the agreement for one of three specific reasons, including "for cause," then the distributor is not entitled to any

2

compensation.  Id. § 19.126.040(4).  But if the supplier terminates the agreement for "any reason other than" those three reasons, including "other than for cause," the distributor is entitled to compensation for inventory and the fair market value of the terminated rights.  Id.  Thus, if the supplier contracts for the right to terminate without cause, the Act gives the supplier two choices:  (1) the supplier may terminate the agreement for cause after giving the distributor an opportunity to cure any deficiencies, in which case the supplier would not owe any compensation; or (2) the supplier may terminate the agreement without cause and provide compensation for inventory and the fair market value of the terminated rights.

When applying Washington law, we are bound by decisions of the Washington Supreme Court and, in the absence of a decision from the Washington Supreme Court, we must look to decisions of the Washington Court of Appeals to aid our prediction of how the Washington Supreme Court would decide the issue. See PSM Holding Corp. v. Nat'l Farm Fin. Corp., 884 F.3d 812, 820 (9th Cir. 2018) (explaining how federal courts interpret state law).  But here, there is no Washington state court authority suggesting that our interpretation of the statutory text is incorrect.

In Birkenwald Distributing Co. v. Heublein, Inc., 776 P.2d 721 (Wash. Ct. App. 1989), the court held only that "the Act must be limited to distributorship

3

agreements created after its effective date." Id. at 726. And in Mt. Hood Beverage Co. v. Constellation Brands, Inc., 63 P.3d 779 (Wash. 2003), the Washington Supreme Court held only that an earlier version of the Act that exempted in-state wineries violated the dormant commerce clause. Id. at 785–87. In that context, the court's statement that the Act requires suppliers "to give notice and cause before canceling contracts with distributors," id. at 786, is best viewed as unreasoned dictum.

2. The Agreement grants Defendant the right to terminate without cause. When interpreting a contract under Washington law, "the preferred interpretation gives meaning to all provisions and does not render some superfluous or meaningless." Bogomolov v. Lake Villas Condo. Ass'n of Apartment Owners, 127 P.3d 762, 766 (Wash. Ct. App. 2006). Paragraph 6.2 of the Agreement explains in detail the parties' rights "in the event of the termination of this Agreement by [Defendant] without cause." (Emphasis added). Unless Defendant has the right to terminate without cause, the entirety of Paragraph 6.2 would be surplusage.

3. Plaintiff is also unlikely to succeed on its claim under the Washington Franchise Investment Protection Act ("FIPA"). First, it is not clear that FIPA applies to the termination of beer distribution agreements at all, in light of the more specific Wholesale Distributor Act, which clearly governs such agreements and their termination. See Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State

Liquor Control Bd., 340 P.3d 849, 856 (Wash. 2015) ("A general statutory provision must yield to a more specific statutory provision.").

But even if FIPA does apply to beer distributors that meet the definition of a franchise, and even assuming Plaintiff qualifies as a franchise, Plaintiff likely waived the right to injunctive relief as a remedy for any FIPA violation. The Agreement expressly provides that, in the event of a supplier's termination of the Agreement without cause, the supplier "shall pay to [the] Distributor" a specified sum "in full and complete satisfaction, waiver and discharge of all claims of whatever nature that [the] Distributor may have against [the supplier], arising out of or with respect to the termination." Although FIPA makes it unlawful for a supplier to terminate a franchise without cause, Wash. Rev. Code § 19.100.180(2)(j), FIPA does not require that right to be enforceable through injunctive relief in the case of private enforcement, id. § 19.100.190(2). The parties therefore could agree to limit the remedy to damages—rather than injunctive relief—in the case of a supplier-initiated, without-cause termination.

**VACATED and REMANDED.**