174 P.3d 1224 (2007)
Sandra LAKE, individually, Appellant,
v.
WOODCREEK HOMEOWNERS ASSOCIATION, a Washington homeowners association; Glen R. Clausing, a single man, Respondents.
No. 59211-4-I.
Court of Appeals of Washington, Division 1.
December 31, 2007.
*1225 Marianne Kathryn Jones, Attorney at Law, Mona Kathleen McPhee, Jones Law Group PLLC, Bellevue, WA, Christopher Ian Brain, Tousley Brain Stephens PLLC, Seattle, WA, for Appellant.
Scott Michael Barbara, Johnson Andrews & Skinner PS, Seattle, WA, Charles Edward Watts, Attorney at Law, Bellevue, WA, for Respondents.
ELLINGTON, J.
¶ 1 With permission of the condominium board of directors, a unit owner built a second story "bonus room" above his garage. This both converted common area (air space) into apartment area, and created new common area (e.g., walls), thus changing the character of the property and altering all of the owners' undivided percentage interests in the common areas. Under the condominium declaration, such a change requires unanimous consent of all owners, which was not obtained. The board's authorization of the bonus room was therefore improper. We reverse the superior court and remand for further proceedings.

BACKGROUND
¶ 2 Glen Clausing and Sandra Lake own townhomes in Woodcreek Condominiums in Bellevue. When the development was built in 1972 through 1977, the developer offered an option with certain types of units for a bonus rooman extra room above the garage.[1] Some purchasers opted for bonus *1226 rooms at the time of construction. As required by law, at the end of construction, the developer declared the value of each unit and the total value of the development. The ratio of each unit's value to the total determined each owner's undivided percentage interest in the common areas.
¶ 3 Clausing's unit is one of those for which a bonus room was originally an option. In mid-May 2004, Clausing obtained approval from the board of directors of the Woodcreek Homeowners Association to build a bonus room. When construction began, Lake, who lives across from Clausing, realized the new room would affect her natural light and block part of her territorial view. She complained immediately to two board members and at the next board meeting a few days later, she formally objected. The board refused to withdraw its approval. Within four weeks, the bonus room's siding was up and the roof was complete.
¶ 4 Lake consulted her attorney, who wrote to the board on August 26 contending the board's action was unauthorized and seeking withdrawal of the board's approval and removal of the new room. The board again refused.
¶ 5 As of September 1, the board increased Clausing's dues to cover the common expenses associated with the new structure.
¶ 6 In December 2005, Lake filed this action against the Woodcreek Homeowners Association and Clausing. She moved for partial summary judgment, arguing that approval and construction of a bonus room violated the Horizontal Property Regimes Act, chapter 64.32 RCW, and the condominium declaration. Clausing and Woodcreek also moved for summary judgment, contending the Board's action was proper. The trial court agreed with Clausing and Woodcreek, awarded fees and costs against Lake, and dismissed. Lake appeals.

ANALYSIS
¶ 7 The usual standard for summary judgment applies.[2]
¶ 8 "All condominiums are statutorily created."[3] The rights and duties of condominium unit owners are not the same as those of real property owners at common law, and are instead determined by the governing statutes, the condominium declaration, and the bylaws of the condominium association.[4] In exchange for the benefits of association with other owners, condominium purchasers "`give up a certain degree of freedom of choice which [they] might otherwise enjoy in separate, privately owned property.'"[5] The Horizontal Property Regimes Act, Washington's first law authorizing condominiums, governs the Woodcreek development.[6] All owners are subject to the condominium's declaration and bylaws.[7]
¶ 9 The Woodcreek declaration provides that any alteration in the percentage of undivided interest in common areas must be unanimously approved by all owners:
[A]n amendment altering the value of the property and of each apartment and the percentage of undivided interest in the common areas and facilities shall require *1227 the unanimous written consent of all apartment owners.[8]
The principal question here is whether building the bonus room converted common area into private apartment area or created new common area. If so, it changed each owner's percentage of undivided interest in the common areas without the necessary consent.[9]
¶ 10 The Woodcreek declaration defines apartments, common areas, and limited common areas. Apartments are the area bounded by the interior surfaces of the walls. Common areas include, in addition to those defined in RCW 64.32.010:[10]"[A]ll areas not expressly described as part of the individual residence apartments or as limited common area"[11] as well as "roofs, walls, foundations, studding, joists, beams, supports, main walls, . . . pipes, conduits and wire, . . . and all other structural parts of the buildings to the interior surfaces of the apartments' perimeter walls, floors, ceilings, windows and doors[,] . . . [t]he green belt areas, other yard areas, all garden areas. . . . [and][a]ll other parts of the property necessary or convenient to its existence, maintenance, safety and use not otherwise classified."[12] Limited common areas, assigned to each unit, include a patio/garden, attic storage, a crawl space, an entrance area, and a driveway parking area.
¶ 11 Air space above an apartment unit is not part of the apartment and is not limited common area. It is a part of the property necessary to its existence and is not otherwise classified. Air space is therefore common area. By eliminating the air space above his garage, Clausing converted common area to apartment area and thus put common area to his sole benefit.
¶ 12 A somewhat similar situation arose in Bogomolov v. Lake Villas Condominium Association of Apartment Owners.[13] There, 60 percent of owners approved an amendment to Lake Villas' declaration allowing for construction of a new boat dock with slips to be leased to individual apartment owners. Because the dock was to be constructed on common area shore lands, renting slips to individual owners would convert common area into limited common area.[14] As some individuals would gain exclusive use of what were previously common areas, the conversion would necessarily change the value of individual owners' percentage interest in the common areas. Consequently, the court held that approval of 100 percent of the owners was required to authorize the change;
[I]t is the fact that newly constructed common areas proposed here are in reality being converted to limited common areas under the proposal that requires the values stated in the Declaration to be changed. Values set forth in the Declaration are to accurately reflect the unit and limited common area interests of the owners. That change requires unanimous consent of the *1228 owners.[15]
The result is the same here.[16] Clausing gained individual use of what was previously common area. As a result, the common area interests, and thus unit values, were altered. Woodcreek's declaration requires unanimous agreement of all owners for this type of change.
¶ 13 Clausing and Woodcreek argue that common area interests did not change because unit value determines percentage interest in common areas, and the developer did not tie unit values to bonus rooms. It may be true that the developer's declared values did not reflect a consistent difference based on the presence or absence of a bonus room, but what the developer considered in declaring the unit values and ownership percentages is irrelevant. Once the declaration is final, the values and percentages are fixed. They are subject to change only by unanimous vote, and converting common area to apartment area necessarily changes them. Clausing also argues that the board approved bonus rooms without challenge seven times previously, but erroneous past practice does not enlarge the board's authority.
¶ 14 Clausing and Woodcreek next contend the bonus room was properly authorized under section 12 of the declaration, which requires approval of only 51 percent of owners to combine and subdivide apartment units. But section 12 permits combining or subdividing areas of like quality, such as apartments and apartments.[17] Such combinations and subdivisions do not change the total ownership interests in the property, they merely realign them. Section 12 does not authorize combining areas of different ownership quality, such as common areas and apartments.
¶ 15 Clausing and Woodcreek contend that such a combination of unlike areas was permitted in McLendon v. Snowblaze Recreational Club Owners Association.[18] There, a condominium association board leased a common storage area to the owner of an adjacent unit, who planned to convert the area into a bedroom. The declaration required 60 percent of the owners in the building to approve the "subdivision o[r] combination or both, of any apartment or apartments or of the common areas, or any parts ther[e]of, and the means for accomplishing such subdivision or combination or both."[19] McLendon argued that the declaration required unanimous approval to combine an apartment with common area. Division III of this court rejected his argument on the ground that the unanimous approval section "control[led] amendment of the entire declaration. It [did] not address the question before us: voting requirements for combining a common area and an apartment."[20]
¶ 16 The court's opinion does not quote the portion of the declaration relied upon by McLendon. But if it is similar to the Woodcreek declaration requiring unanimous approval for changes to the value of the units or the owners' undivided interest in the common areas, we must disagree with the McLendon court. The declaration provision permitting combinations and subdivisions and its governing authority, RCW 64.32.090(10),[21] allow for subdividing apartments, combining apartments with apartments, *1229 or combining common areas with other common areas, all of which cause no net difference in the total for each type of area. Combining common area with an apartment, however, increases the private area of the apartment and reduces the total common area in which all owners have an interest.[22] Approval of such a combination is not within the authority conferred by the statute or section 12.
¶ 17 Constructing a bonus room also creates new common area (walls and roof, for example) and thus increases the common expenses. RCW 64.32.080 provides that "[t]he common profits of the property shall be distributed among, and the common expenses shall be charged to, the apartment owners according to the percentage of the undivided interest in the common areas and facilities." Keller v. Sixty-01 Associates makes clear that the relationship between percentage of undivided interest and common expenses is such that "one could not be changed without the other."[23] The allocation of common expenses thus cannot be altered without changing owners' percentages of undivided interest.
¶ 18 To cover the new expenses, the board increased Clausing's dues. Woodcreek contends the holding in Keller invalidates Clausing's dues increase, not the authorization to build.[24] We disagree. An increase in common expenses owing to construction of a new private area reflects a change in the undivided interests in the property, however it is allocated. Under the declaration, unanimous approval was required.
¶ 19 By approving Clausing's bonus room without obtaining the unanimous consent of all owners, the board acted outside its authority.[25]
¶ 20 Alternatively, Clausing notes that we may affirm on any proper ground, whether or not considered by the trial court, and contends summary judgment was justified by laches, estoppel or waiver.[26] His arguments here and below address only laches, and we confine our consideration to that issue.[27]
¶ 21 Laches is an "implied waiver arising from knowledge of existing conditions and acquiescence in them."[28] To establish laches, the defendant must show the plaintiff (1) knew or reasonably should have known the facts constituting the cause of action, (2) unreasonably delayed commencing the action, and (3) caused resulting damage to the defendant.[29] It is the defendant's burden to show whether and to what extent he or she has been prejudiced.[30] Clausing does not specify the damage resulting from Lake's delay, but implies it was the expense of construction.[31]
¶ 22 Lake did not become aware of the project until she received a letter dated July 10, 2004, in which Clausing gave notice to his neighbors that he was beginning *1230 construction of a bonus room in two days.[32] It was thus a practical impossibility for Lake to obtain an injunction before Clausing had made significant expenditures. The question, then, is the reasonableness and consequences of Lake's failure to seek court intervention before construction was complete some seven weeks later.[33] A reasonable delay in filing suit is not fatal to an action for specific performance of a building restriction where the delay results from a desire to procure compliance by means other than litigation.[34] Where notice came so late, compliance was sought by other means, and construction proceeded apace, we cannot say as a matter of law that Lake's failure to seek a restraining order during this brief period was unreasonable. We decline to affirm summary judgment against Lake on this ground.
¶ 23 We reverse summary judgment in favor of Clausing and Woodcreek, reverse the award of fees and costs against Lake, and remand for further proceedings consistent with this opinion.
WE CONCUR: COLEMAN, C.J., and APPELWICK, J.
APPELWICK, C.J. (Concurring).
¶ 24 I fully concur with the majority opinion. I write to emphasize additional reasoning for the result.
¶ 25 First, a condominium is real property. That real property interest includes an ownership interest in, right to share in, and an easement to use the common areas and facilities. RCW 64.32.030, .040, .050(4). Further, common areas shall remain undivided and any covenant to the contrary is void. RCW 64.32.050(3). According to the declaration here, the common areas include everything not an apartment or designated limited common area.
¶ 26 When construction on the units was complete, any optional bonus room shown on the plans that had not been constructed was not within an apartment. It was also not designated as limited common area. Therefore it was common area. Later enclosing this common area to add a bonus room onto an adjacent apartment is a taking of a common area interest owned by all members of the condominium. This may not be done without the consent of all owners.
¶ 27 It is precisely for this reason that McLendon was wrongly decided. McLendon allowed the combination of a common area storage shed with an apartment on less than a unanimous vote under RCW 64.32.090(10) (authorizing the declaration to provide combining or dividing apartments, common areas and limited common areas on less than unanimous vote of owners). This statute and section 12 of the declaration must be read to apply only to combining or dividing like-kind properties. Otherwise, the other owners are deprived of a portion of their real property ownership interest in common areas without consent, let alone compensation.
¶ 28 Further, I would hold that the addition of a room at the expense of common area necessarily increases the value of that apartment and of the condominium as a whole. It also necessarily changes the ownership interests of all owners relative to one another. This in turn requires amendment to the declaration. Unanimous consent of the owners is required for amending the declaration. RCW 64.32.090(13).
¶ 29 If the additional room was built on new footings off the end of a one story building eliminating a prized common area garden and blocking the exclusive view of the sound for other owners, the facts would tug more at the emotions. But the loss of real property interests are just as real on these facts where the additional room is built on a second story of a townhouse condominium *1231 above a garage blocking light. These real property interests cannot be taken. Consent of all of the owners is required. For these reasons and the reasons stated by the majority, I concur.
NOTES
[1] The original declaration provided: "[T]here is designated in the plans for Type C and D units a room designated as the `Bonus Room.' Upon the option of the purchaser, the second floor plans for the Type C and D Units will include an additional area to be situated directly above the two car garage which is incorporated within the basic structure of the apartment unit. The Bonus Room will consist of one of four alternate floor plans. The Bonus Room will increase the square footage of said units by 415 square feet." Clerk's Papers at 222. The declaration included this language each time it was amended to reflect a new phase of construction.
[2] We review a grant of summary judgment de novo, engaging in the same inquiry as the trial court and viewing the facts and the reasonable inferences from those facts in the light most favorable to the nonmoving party. Overton v. Consol. Ins. Co., 145 Wash.2d 417, 429, 38 P.3d 322 (2002). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c).
[3] Shorewood West Condo. Ass'n v. Sadri, 140 Wash.2d 47, 52, 992 P.2d 1008(2000).
[4] Id.
[5] Id. (quoting Noble v. Murphy, 34 Mass.App.Ct. 452, 456, 612 N.E.2d 266 (1993)).
[6] Id.
[7] RCW 64.32.250.
[8] Clerk's Papers at 240.
[9] Clausing contends the association bylaws govern, and under the bylaws, the board has authority to manage the property and must approve any structural modification to apartments or common areas. But the bylaws do not address the issue presented herean addition that alters the character of the propertyand the declaration controls.
[10] RCW 64.32.010 provides: "`Common areas and facilities', unless otherwise provided in the declaration as duly recorded or as it may be lawfully amended, includes: (a) The land on which the building is located; (b) The foundations, columns, girders, beams, supports, main walls, roofs, halls, corridors, lobb[ie]s, stairs, stairways, fire escapes, and entrances and exits of the building; (c) The basements, yards, gardens, parking areas and storage spaces; (d) The premises for the lodging of janitors or persons in charge of the property; (e) The installations of central services such as power, light, gas, hot and cold water, heating, refrigeration, air conditioning and incinerating; (f) The elevators, tanks, pumps, motors, fans, compressors, ducts and in general all apparatus and installations existing for common use; (g) Such community and commercial facilities as may be provided for in the declaration as duly recorded or as it may be lawfully amended; (h) All other parts of the property necessary or convenient to its existence, maintenance and safety, or normally in common use."
[11] Clerk's Papers at 282 (emphasis added).
[12] Id.
[13] 131 Wash.App. 353, 127 P.3d 762 (2006).
[14] Id. at 363, 127 P.3d 762.
[15] Id. at 367, 127 P.3d 762.
[16] Woodcreek contends the result in Bogomolov derived from unique aspects of the declaration, which expressly tied dock space to percentage interest, provided for transfer of such spaces among owners, and required unanimous consent for combining or subdividing like areas. We fail to see how these aspects of the declaration led to the holding cited above.
[17] "[N]o subdivision or combination of any apartment unit or units or of the common areas or facilities or limited common areas or facilities may be accomplished except by authorization by the affirmative vote of 51% of the voting power of the owners." Clerk's Papers at 232.
[18] 84 Wash.App. 629, 929 P.2d 1140 (1997).
[19] Id. at 632, 929 P.2d 1140.
[20] Id. at 633, 929 P.2d 1140.
[21] "The declaration shall contain . . . [a] provision authorizing and establishing procedures for the subdividing and/or combining of any apartment or apartments, common areas and facilities or limited common areas and facilities, which procedures may provide for the accomplishment thereof through means of a metes and bounds description." RCW 64.32.090(10).
[22] RCW 64.32.040 ("Each apartment owner shall have the common right to a share, with other apartment owners, in the common areas and facilities."); 8-54A POWELL ON REAL PROPERTY, § 54A.01 (2005) (unit owners possess nonexclusive right to use and enjoy common areas subject to community rules and regulations).
[23] 127 Wash.App. 614, 623, 112 P.3d 544 (2005).
[24] Clausing does not address Keller.
[25] Given our conclusion that the board acted outside its authority, we decline to address Lake's contention that the trial court abused its discretion by allowing Woodcreek to amend its answer.
[26] The summary judgment order is silent as to the court's rationale, but a review of the oral ruling makes clear the court did not rely upon equitable grounds.
[27] RAP 10.3(a)(5) (failure to provide argument or authority in support of an assignment of error precludes review).
[28] Buell v. Bremerton, 80 Wash.2d 518, 522, 495 P.2d 1358 (1972).
[29] In re Marriage of Watkins, 42 Wash.App. 371, 374, 710 P.2d 819 (1985).
[30] Clark County Pub. Util. Dist. No. 1 v. Wilkinson, 139 Wash.2d 840, 849, 991 P.2d 1161 (2000).
[31] See Clerk's Papers at 193 ("The cost of my bonus room remodeling was in excess of $150,000. . . . I would not have built the bonus room had the Board not given me permission to do so.").
[32] The board approved the bonus room at its May 20, 2004 meeting. According to Lake, she may have received a copy of the minutes of the May meeting after they were approved at the next meeting on June 17, but if so, she did not read them because she was caring for parents in their nineties. (Her father died June 8, and her mother is in nursing care).
[33] Although Clausing emphasizes that Lake waited 15 months to file suit, he alleges no prejudice from post-construction delay.
[34] Mt. Baker Park Club v. Colcock, Inc., 45 Wash.2d 467, 472, 275 P.2d 733 (1954).