229 P.3d 791 (2010)
Sandra LAKE, individually, Respondent,
v.
WOODCREEK HOMEOWNERS ASSOCIATION, a Washington Homeowners Association; and Glen R. Clausing, a single man, Petitioners.
No. 81873-8.
Supreme Court of Washington, En Banc.
Argued October 29, 2009.
Decided April 15, 2010.
*793 Charles Edward Watts, Oseran Hahn Spring Straight & Watts, P.S., Bellevue, WA, Scott Michael Barbara, Johnson Andrews & Skinner, P.S., Seattle, WA, for Petitioners.
Marianne Kathryn Jones, Attorney at Law, Mona Kathleen McPhee, Jones Law Group, P.L.L.C., Bellevue, WA, for Respondent.
FAIRHURST, J.
¶ 1 The Horizontal Property Regimes Act (HPRA), chapter 64.32 RCW, applies to the Woodcreek Condominium in Bellevue, Washington. A Woodcreek owner, Sandra Lake, invokes the HPRA to resolve a dispute between her, the Woodcreek Homeowners Association, and her fellow condominium owner Glen R. Clausing. Lake claims that the association's board of directors violated the HPRA or Woodcreek's declaration when it approved Clausing's request for permission to build a second-story addition on his townhouse-style condominium apartment. Two questions are presented. Does the HPRA or Woodcreek's declaration bar the division of a condominium's common areas? Does the HPRA or Woodcreek's declaration require the unanimous consent of condominium owners to combine a portion of the common area with the owner's apartment? We answer no to both questions.

The HPRA
¶ 2 The HPRA governs condominiums in Washington established between 1963 and July 1, 1990, as Woodcreek was. These condominiums are also regulated by select provisions of the Condominium Act, chapter 64.34 RCW, as well as the condominium's declaration and bylaws. The HPRA defines a "`[d]eclaration'" as "the instrument by which the property is submitted to provisions of [the HPRA]." RCW 64.32.010(9). Akin to a master deed, a declaration describes the condominium property and contains the covenants defining the property rights and legal obligations of the property owners. 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 12.3, at 23 (2d ed. 2004). The declaration is incorporated into each condominium apartment's deed. See RCW 64.32.120(1). Bylaws provide for the administration of the condominium. RCW 64.32.090(11). The bylaws must accord with the declaration, which, in turn, must obey the HPRA. See Shorewood W. Condo. Ass'n v. Sadri, 140 Wash.2d 47, 54, 992 P.2d 1008 (2000).
¶ 3 The HPRA permits a condominium to comprise three kinds of property-private apartments, common areas, and limited common areas-with a condominium owner holding different kinds of property rights in each. An "`[a]partment'" is "a part of the property intended for any type of independent use ... and which has a direct exit to a public street or highway, or to a common area leading to such street or highway." RCW 64.32.010(1). When an apartment is within a building, the HPRA delineates the boundaries as "the interior surfaces of the perimeter walls, floors, ceilings, windows and doors thereof," along with "the air space so encompassed." Id. The HPRA permits an apartment to be leased, owned as a tenancy in common, or held in any other way "in which real property may be owned, leased or possessed in [Washington]." RCW 64.32.010(2). The declaration must describe "the number of apartments," RCW 64.32.090(2), as well as "[t]he *794 apartment number of each apartment, and a statement of its location, approximate area, number of rooms, and immediate common area to which it has access, and any other data necessary for its proper identification," RCW 64.32.090(3). An apartment owner has "exclusive ownership and possession of his apartment but any apartment may be jointly or commonly owned by more than one person." RCW 64.32.040.
¶ 4 A common area, under the HPRA's catchall definition of "`[c]ommon areas and facilities,'" includes the "parts of the property necessary or convenient to its existence, maintenance and safety, or normally in common use." RCW 64.32.010(6)(h). The HPRA names several specific parts of the condominium property as common areas or facilities, including the building's foundation, roof, and exterior walls; any central heating or cooling; any centralized water works; any ducts, pumps, and elevators, and more. RCW 64.32.010(6). These are the default definitions, but the HPRA allows the declaration to differ. (The Woodcreek declaration largely accords with the HPRA catchall and specific definitions, and adds, among other things, pipes, conduits, and wires, as well as the gardens and green spaces.) The declaration must describe the common areas. RCW 64.32.090(4).
¶ 5 The HPRA defines a "`[l]imited common area and facilities'" as "those common areas and facilities designated in the declaration, as it is duly recorded or as it may be lawfully amended, as reserved for use of certain apartment or apartments to the exclusion of the other apartments." RCW 64.32.010(11). The limited common areas must be described in the declaration. RCW 64.32.090(5).
¶ 6 Condominium owners hold "an undivided interest in the common areas and facilities in the percentage expressed in the declaration." RCW 64.32.050(1). This includes the limited common areas. The condominium owners have a right to share in the profits from the condominium property and are obligated to cover the common expenses. RCW 64.32.080.
¶ 7 The HPRA requires that declaration amendments be allowed. The declaration itself must contain "[t]he method by which the declaration may be amended." RCW 64.32.090(13). The amendment procedure must, at a minimum, include a provision stating "[t]hat not less than sixty percent of the apartment owners shall consent to any amendment." Id. However, the amendment procedure for "any amendment altering the value of the property and of each apartment and the percentage of undivided interest in the common areas and facilities" requires the unanimous consent of the owners. RCW 64.32.090(13).
¶ 8 The HPRA also mandates that the declaration allow for modifications to the apartments, common areas, and limited common areas. The declaration must include "[a] provision authorizing and establishing procedures for the subdividing and/or combining of any apartment or apartments, common areas and facilities or limited common areas and facilities, which procedures may provide for the accomplishment thereof through means of a metes and bounds description." RCW 64.32.090(10).

I. FACTUAL AND PROCEDURAL HISTORY
¶ 9 The Woodcreek apartments were developed in several different styles, some built with two stories and others with one. The Woodcreek developer had marketed a second story as an optional bonus room, and several original purchasers paid extra money to have a second story built. After the Woodcreek development was completed, several owners approached the Woodcreek board over the years to request its permission to build second-story additions to their one-story apartments, and the board liberally granted permission.
¶ 10 Lake and Clausing own Woodcreek apartments that neighbor one another but are separated by a small greenbelt. Lake's unit was originally built with a second story. Clausing's was not, but a few years ago, he requested the Woodcreek board's permission to construct a second-story addition of his own. Without putting the matter to a vote of the condominium owners or seeking an amendment to the declaration, the Woodcreek *795 board granted Clausing permission to go forward with his construction plans. The addition required construction of new exterior walls, which were designated as common areas under the Woodcreek declaration. Upon completion, the project increased his apartment's size by approximately 458 square feet. The Woodcreek board, without changing the declaration's stated percentages that are supposed to be the method for calculating each owner's share of the common expenses, increased Clausing's monthly dues to cover the increase in maintenance costs that the Woodcreek Homeowners Association would bear.
¶ 11 Lake objected and sued Clausing and Woodcreek Homeowners Association. The relief she sought was, in the alternative, an order that Clausing remove his bonus room, an order that Woodcreek obtain unanimous consent of the Woodcreek owners for Clausing's addition, or an award of damages. Woodcreek filed a cross claim against Clausing. Lake moved for partial summary judgment. Clausing filed a response and cross-moved for summary judgment against both Lake and Woodcreek. Woodcreek joined Clausing's cross motion against Lake. Without discussing the issues, the trial court granted Clausing and Woodcreek's cross motion against Lake and dismissed her complaint.
¶ 12 The Court of Appeals reversed. Lake v. Woodcreek Homeowners Ass'n, 142 Wash. App. 356, 367, 174 P.3d 1224 (2007). The court held that Clausing's second-story addition, by enveloping air space, took a common area for apartment area. Id. at 362, 174 P.3d 1224. Clausing and Woodcreek argued that as long as 51 percent of the owners voted in favor, RCW 64.32.090(10) and section 12 of the declaration authorized the Woodcreek Homeowners Association to divide a common area and combine it with a private apartment. The Court of Appeals disagreed, concluding that RCW 64.32.090(10) permitted only "combining apartments with apartments, or combining common areas with other common areas." Lake, 142 Wash.App. at 365, 174 P.3d 1224. Further, the court concluded that any combination of common area with private apartment "necessarily changes" the declaration's stated values for each apartment, the value for the condominium as a whole, and the percentages of undivided interest in the common areas. Id. at 364, 174 P.3d 1224. This automatic change, the court reasoned, triggered the requirement of RCW 64.32.090(13) that the declaration be amended upon unanimous consent of the condominium owners. Id. at 366, 174 P.3d 1224.
¶ 13 We granted Clausing's and Woodcreek's separate petitions for review. Lake v. Woodcreek Homeowners Ass'n, 165 Wash.2d 1012, 199 P.3d 410 (2009).

II. ISSUES
A. Does the HPRA or Woodcreek's declaration bar the division of a condominium's common areas?
B. Under the HPRA and Woodcreek's declaration, was the unanimous consent of the Woodcreek owners necessary to approve Clausing's request to combine a portion of the common area with the owner's apartment?

III. STANDARD OF REVIEW
¶ 14 In this case we review an order for summary judgment involving the interpretation of a statute and a condominium declaration. "We review petitioners' motion for summary judgment de novo, engaging in the same inquiry as the trial court." Berrocal v. Fernandez, 155 Wash.2d 585, 590, 121 P.3d 82 (2005) (citing Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982)). A trial court must grant a motion for summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). Statutory interpretation is a question of law, which we review de novo. Rozner v. City of Bellevue, 116 Wash.2d 342, 347, 804 P.2d 24 (1991). A condominium declaration is like a deed, the review of which is a mixed question of law and fact. Roeder Co. v. Burlington N., Inc., 105 Wash.2d 567, 571-72, 716 P.2d 855 (1986) (citing Veach v. Culp, 92 Wash.2d 570, 573, 599 P.2d 526 (1979)). The factual issue is the declarant's intent, which we discern from the face of the declaration. See id. The declaration's legal consequences are questions of law, which we review de novo.

*796 IV. RULES OF STATUTORY INTERPRETATION
¶ 15 "The court's fundamental objective in construing a statute is to ascertain and carry out the legislature's intent." Arborwood Idaho, LLC v. City of Kennewick, 151 Wash.2d 359, 367, 89 P.3d 217 (2004). Statutory interpretation begins with the statute's plain meaning. Plain meaning "is to be discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." State v. Engel, 166 Wash.2d 572, 578, 210 P.3d 1007 (2009). While we look to the broader statutory context for guidance, we "must not add words where the legislature has chosen not to include them," and we must "construe statutes such that all of the language is given effect." Rest. Dev., Inc. v. Cananwill, Inc., 150 Wash.2d 674, 682, 80 P.3d 598 (2003). If the statute is unambiguous after a review of the plain meaning, the court's inquiry is at an end. State v. Armendariz, 160 Wash.2d 106, 110, 156 P.3d 201 (2007). But if the statute is ambiguous, "this court may look to the legislative history of the statute and the circumstances surrounding its enactment to determine legislative intent." Rest. Dev., 150 Wash.2d at 682, 80 P.3d 598.

V. ANALYSIS

A. Does the HPRA or Woodcreek's declaration bar the division of a condominium's common areas?
¶ 16 Clausing's second-story addition took a portion of a common area[1] and combined it with his private apartment.[2] One section of the HPRA, RCW 64.32.050(3), speaks in broad prohibitory terms against the partition or division of common areas: "The common areas and facilities shall remain undivided and no apartment owner or any other person shall bring any action for partition or division of any part thereof.... Any covenant to the contrary shall be void." At first glance, the language of this provision seems absolute. The statute says common areas may not be divided, and a covenant providing otherwise is unenforceable. A second interpretation, however, views RCW 64.32.050(3) not as an absolute bar, but rather a prohibition only against involuntary partition through an action brought in court. This interpretation was adopted by Division Three in McLendon v. Snowblaze Recreational Club Owners Ass'n, 84 Wash.App. 629, 632, 929 P.2d 1140 (1997).
¶ 17 We read RCW 64.32.050(3) in light of RCW 64.32.090(10), which requires a condominium declaration to contain "[a] provision authorizing and establishing procedures for the subdividing and/or combining of any apartment or apartments, common areas and facilities or limited common areas and facilities." (Emphasis added.) RCW 64.32.090(10) provides context for RCW 64.32.050(3), and we must give effect to both sections. Clausing and Woodcreek argue that RCW 64.32.090(10) requires a declaration to allow for the combination and division of unlike areas, e.g., an apartment with common area. Lake focuses on the word "or" in RCW 64.32.090(10), contending that the use *797 of the disjunctive means a common area may not be combined with an apartment.
¶ 18 "When a statutory term is undefined, the words of a statute are given their ordinary meaning, and the court may look to a dictionary for such meaning." State v. Gonzalez, 168 Wash.2d 256, 263, 226 P.3d 131 (2010). The dictionary describes "or" as a "function word" indicating "an alternative between different or unlike things." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1585 (2002) (emphasis added). In this sense, "or" is used to indicate an inclusive disjunctiveone or more of the unlike things can be true. The dictionary gives the example: "wolves [or] bears are never seen in that part of the country." Id. But the dictionary notes "or" can also mean a "choice between alternative things, states, or courses," and gives the usage: "will you have tea [or] coffee." Id. (emphasis added). This is the exclusive disjunctiveone or the other can be true, but not both. These two logical variations of the disjunctive have long confounded the drafters of contracts. See E. Allan Farnsworth, "Meaning" in the Law of Contracts, 76 YALE L.J. 939, 955 (1967)("Particularly hazardous as a source of ambiguity for the contract draftsman are the words `and' and `or.'"). Usually, the intended meaning is apparent from the surrounding context.
¶ 19 Here, we look to the context of the other provisions of the HPRA. On the one hand, the HPRA protects the individual owners' property interests in the common areas. See RCW 64.32.040 ("Each apartment owner shall have the common right to a share, with other apartment owners, in the common areas and facilities."); RCW 64.32.050(1) ("Each apartment owner shall be entitled to an undivided interest in the common areas and facilities in the percentage expressed in the declaration."); RCW 64.32.050(4) ("Each apartment owner shall have a nonexclusive easement for, and may use the common areas and facilities in accordance with the purpose for which they were intended without hindering or encroaching upon the lawful right of the other apartment owners.").
¶ 20 At the same time, the HPRA grants the condominium owners some flexibility to govern their affairs and rearrange their property rights. See RCW 64.32.090(12) (allowing the original declaration to address any "details in connection with the property which the person executing the declaration may deem desirable to set forth consistent with [the HPRA]"); RCW 64.32.090(13) (requiring a declaration to allow for amendments). The HPRA, taken as a whole, therefore indicates the legislature sought a balance between protecting individual owners' rights and granting flexibility to the community as a whole. This balancing favors an interpretation of "or" in RCW 64.32.090(10) to be the inclusive disjunctive, allowing for combination of unlike areas.
¶ 21 If we interpreted RCW 64.32.090(10) not to allow combinations of unlike areas, the statute would not make sense. As Lake concedes, RCW 64.32.090(10) permits an apartment to be combined with another apartment. But for that combination to happen, common areathe wall between the apartmentsusually must be taken. Further, if we adopted Lake's interpretation, RCW 64.32.090(10) would permit combinations of common areas only with other common areas, or of limited common areas only with other limited common areas. But property owned in common is already owned in common. It does not need to be combined.
¶ 22 We conclude that "or" in RCW 64.32.090(10) is used in the inclusive disjunctive sense. RCW 64.32.090(10) requires a declaration to allow for the division of a common area and the combination of a common area with a private apartment. Under this interpretation of RCW 64.32.090(10), we can conclude only that RCW 64.32.050(3) is limited to prohibiting involuntary partition actions brought in court.

B. Under the HPRA and Woodcreek's declaration, was the unanimous consent of the Woodcreek owners necessary to approve Clausing's request to combine a portion of the common area with the owner's apartment?
¶ 23 When a homeowners association seeks to change the declaration with "any amendment altering the value of the property and of each apartment and the percentage of *798 undivided interest in the common areas and facilities," RCW 64.32.090(13) mandates "the unanimous consent of the apartment owners." Section 19 of the Woodcreek declaration tracks the language of RCW 64.32.090(13) and adds a written consent requirement:
This Declaration may be amended consistent with the laws of 1963, Chapter 156 (RCW 64.32) ... provided, however, that an amendment altering the value of the property and of each apartment and the percentage of undivided interest in the common areas and facilities shall require the unanimous consent of all apartment owners.
Clerk's Papers (CP) at 240.
¶ 24 Because RCW 64.32.090(13) applies only to declaration amendments, a threshold question is whether an amendment to the Woodcreek declaration was required before the construction of Clausing's second-story addition was permissible. Every apartment's deed incorporates the declaration, see RCW 64.32.120(1), and so the declaration defines the property rights of all owners. A declaration must address several subjects, including each apartment's "approximate area" and "number of rooms," RCW 64.32.090(3), and "the number of stories" on each building, RCW 64.32.090(2).[3] Clausing's bonus room increased his apartment's square footage, increased the number of rooms in his apartment, and added a story to the building in which his apartment is located.
¶ 25 Clausing and Woodcreek, however, argue that Woodcreek did not have to amend its declaration; they say the Woodcreek declaration has always preserved an option for owners to build a bonus room. They note that the declaration's 1976 amendments, which enabled the third and final phase of Woodcreek's construction, discussed a purchaser's option to build a bonus room:
At the option of the purchaser the floor plans ... will include an additional area to be situated directly above the car garage area which is incorporated within the basic structure of the apartment unit. The bonus room will consist of one of four alternate floor plans and will increase the square footage of said units by approximately 416 square feet.
CP at 386. Because the Woodcreek declaration is incorporated into each apartment's deed, Clausing and Woodcreek further claim that every Woodcreek owner therefore acquiesced to the right of each other owner to build a second-story addition. On these grounds, they argue no further consent was required to build Clausing's bonus room.
¶ 26 Once the construction of Woodcreek was complete, however, the developer submitted amendments in 1977, along with revisions to the survey and building plans, which gave a final accounting of the condominium. The revised building plans listed the units that had second-story additions; Clausing's unit was not among them. In a chart accounting for the elevations of each unit, the "second story" column for Clausing's unit indicates, "N/A." CP at 375. Still, Clausing and Woodcreek insist that the Woodcreek board has always understood the declaration to allow for second-story additions, and several have been approved and built. But the Woodcreek board's general practice does not establish property rights. The Woodcreek declaration and incorporated survey and building plans delineate the property rights of the Woodcreek owners, and after the developer finished construction, Clausing's unit was a single story. Nothing in the 1977 amendments indicates that owners retained a continuing right to build a second-story addition.
¶ 27 Nevertheless, the question remains whether Clausing's second-story addition triggered the unanimous consent requirement in RCW 64.32.090(13). Our answer turns on whether there had to be an amendment to the declaration's statements of "the value of the property and of each apartment and the percentage of undivided interest in the common areas and facilities." Id.
*799 ¶ 28 The word "percentage" may have two different meanings. It can mean a "rate in percent." WEBSTER'S, supra, at 1675 (emphasis added). It can also mean "the result obtained by multiplying a number by a percent." Id. If RCW 64.32.090(13) were read in isolation, the meaning of "percentage" in the HPRA could be "net result" because the term "percentage of undivided interest in the common areas and facilities" alludes to each owner's net share in the condominium's common areas. But that understanding is dispelled, and any ambiguity eliminated, by looking to the other provisions of the HPRA to see how the term "percentage" is used.
¶ 29 The HPRA requires an owner's declared percentage to be calculated by dividing the apartment's declared value by the value of the entire condominium. RCW 64.32.050(1). A "percentage" is therefore the quotient of an arithmetical division calculation. It is a rate. Other parts of the HPRA show this to be true. As in RCW 64.32.090(13), RCW 64.32.080 uses the term, providing, "The common profits of the property shall be distributed among, and the common expenses shall be charged to, the apartment owners according to the percentage of the undivided interest in the common areas and facilities." (Emphasis added.) In RCW 64.32.080, then, the "percentage of the undivided interest in the common areas and facilities" is the prescribed rate by which each owner's net share of the common profits and expenses is to be calculated. Further, the HPRA provision defining voting rights, RCW 64.32.010(15), states that voting shares are calculated "in accordance with the percentages assigned in the declaration." Again, "percentage" is used as a rate. Finally, in the provision describing each owner's interest in the common areas, RCW 64.32.050(1) says that each owner holds "an undivided interest in the common areas and facilities in the percentage expressed in the declaration." Percentage is the rate used to determine the interest.
¶ 30 The HPRA does not define "value." But the HPRA indicates that "value" has a very limited purpose. Its sole function is to determine the declared percentages. See RCW 64.32.050(1). Any ambiguity about the meaning of "value" disappears upon examination of the legislative history. The original version of the HPRA required periodic updates to reflect the fair market value of each apartment. See LAWS of 1963, ch. 156, § 5(2) (requiring the bylaws to "provide for a periodic reappraisal of the apartments and the common areas and facilities together with a recomputation, if required, of the percentage of undivided interest of each apartment owner in such common areas and facilities"). This requirement, however, was eliminated by the legislature in 1965. See LAWS of 1965, Ex.Sess., ch. 11, § 2. The legislature's modification of the HPRA is strong evidence that values are to remain fixed in the declaration unless amended, and the declared values need not relate to an apartment's fair market value or any other criteria. As far as the HPRA is concerned, the values may be set arbitrarily, as long as they are stated in the declaration.
¶ 31 In this case, Woodcreek did not amend its declared values or percentages, and Clausing did not ask Woodcreek to do so. Clausing's second-story addition may have reduced the total amount of Woodcreek's common area, but it did not change the percentage rates by which each owner's rights and responsibilities are determined. The unanimous consent of the Woodcreek condominium owners was not required. As we have recognized, under the HPRA, "`each owner, in exchange for the benefits of association with other owners, must give up a certain degree of freedom of choice which he [or she] might otherwise enjoy in separate, privately owned property.'" Shorewood, 140 Wash.2d at 53, 992 P.2d 1008 (alteration in original) (internal quotation marks omitted) (quoting Noble v. Murphy, 34 Mass.App.Ct. 452, 456, 612 N.E.2d 266 (1993)).
¶ 32 The Court of Appeals, however, held that "converting common area to apartment area necessarily changes" the declared values and the percentages of undivided interest in the common areas. Lake, 142 Wash.App. at 364, 174 P.3d 1224 (emphasis added). Because the removal of an area from common ownership necessarily would change the owners' property interests in the common areas, there had to be a change to the declared *800 values and percentages of undivided interest in the common areas. Id. at 362-63, 174 P.3d 1224. The Court of Appeals buttressed its conclusion by noting that the Woodcreek board raised Clausing's dues to pay for maintaining the new common areas created by the addition of the bonus room. Id. at 366, 174 P.3d 1224. The court reasoned this increase in dues reflected a change in the percentages of undivided interest. Id. Lake agrees, claiming that the increase in dues and common expenses "effectively reallocated" the declared values and percentages. Combined Answer to Pet. for Review at 9-10.
¶ 33 Unquestionably, changing a common area into an apartment area will change the fair market value of each owner's interest in the common areas. But the "value" as stated in the declaration does not change, and the HPRA does not require it to change. The percentage of undivided interest does not change either, because the HPRA uses "percentage" to mean a rate expressed in percent. With less common area, of course, there is a smaller pie, and the pieces of pie shrink. But the number of pieces, and their size relative to one another, remain the same. There was no change in the rate by which the HPRA defines each owner's voting power, ownership share in the common areas, or responsibilities for common expenses. Further, although the Woodcreek board had no authority to increase Clausing's dues, the proper remedy is to nullify the increase, not to say that the declaration was necessarily changed. Clausing's construction project did not change the "percentage of undivided interest in the common areas and facilities" within the meaning of RCW 64.32.090(13).

VI. CONCLUSION
¶ 34 We reverse the Court of Appeals. The HPRA and Woodcreek's declaration do not bar the division of a condominium's common areas. The HPRA and Woodcreek's declaration do not require the unanimous consent of condominium owners to combine a portion of the common area with the owner's apartment.
¶ 35 We award attorney fees to Clausing, as the prevailing party here. Woodcreek did not request attorney fees. Lake, in her appeal, made assignments of error that were not raised in the petitions for review or Lake's answer. We remand to the Court of Appeals for consideration of any of Lake's remaining arguments.
WE CONCUR: MADSEN, C.J., OWENS, C. JOHNSON, ALEXANDER, J.M. JOHNSON, SANDERS, STEPHENS, and CHAMBERS, JJ.
NOTES
[1] The parties do not challenge the Court of Appeals' conclusion that the airspace above Clausing's garage was a common area.
[2] Lake's position on this point has vacillated. In her brief at the Court of Appeals, Lake argued that the Clausing addition "converted common area into limited common area." Appellant's Revised Opening Br. at 16. This was the same argument that Lake's counsel advanced at oral argument. But in her answer to Woodcreek's and Clausing's petitions for review, Lake states that the "previously existing common area was converted to apartment area." Combined Answer to Pets. for Review at 9. And at the trial court, in her reply in support of her motion for partial summary judgment, Lake argued that Clausing's addition "changed common area into private area." Clerk's Papers at 677. In defense of this position, she cited the section of the Woodcreek declaration that defines apartment areas. Id. at 678. We think Lake has conceded that Clausing's addition enlarged his private apartment; it did not create a limited common area. RCW 64.32.010(1) defines the boundaries of an "`[a]partment'" within a building as "the interior surfaces of the perimeter walls, floors, ceilings, windows and doors thereof, and the apartment includes both the portions of the building so described and the air space so encompassed." In light of this definition, we think Lake's position at the trial court was correct.
[3] The HPRA also requires a condominium to have its building plans on file with the county auditor, and the plans must state, among other things, "[t]he approximate square footage of each unit." RCW 64.32.100(3).