IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| DANNY MCCAULLEY, | ) | No. 76259-1-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DEPARTMENT OF LABOR AND | ) | |
| INDUSTRIES OF THE STATE OF | ) | |
| WASHINGTON, | ) | |
| | ) | |
| Respondent. | ) | FILED: June 25, 2018 |

SCHINDLER, J. — In 2007, the legislature enacted a pilot program for vocational rehabilitation and training of injured workers. LAWS OF 2007, ch. 72, § 2; RCW 51.32.099. After a vocational rehabilitation plan is approved, the worker can elect to participate, Option 1, or decide not to participate, Option 2.[1] If a worker elects Option 2, the worker "is not entitled to further temporary total, or to permanent total, disability benefits except upon a showing of a worsening in the condition or conditions accepted under the claim such that claim closure is not appropriate."[2] Danny McCaulley elected Option 2. The Board of Industrial Insurance Appeals ruled as a matter of law McCaulley is not entitled to permanent total disability or temporary total disability benefits absent

---

[1] RCW 51.32.099(4)(a), (b).
[2] RCW 51.32.099(4)(b).

showing the condition has worsened. On appeal, the superior court affirmed. We affirm the superior court.

## Worker's Compensation Benefits

Under the Industrial Insurance Act (IIA), Title 51 RCW, a worker injured in the course of employment is entitled to compensation. RCW 51.32.010; Tobin v. Dep't of Labor & Indus., 145 Wn. App. 607, 613, 187 P.3d 780 (2008). A worker with a "permanent partial disability" receives a one-time award of benefits based on the loss of function. RCW 51.32.080. A worker with a "permanent total disability" receives a certain percentage of his or her wages as a monthly payment, or "pension" benefits. RCW 51.32.060; McIndoe v. Dep't of Labor & Indus., 144 Wn.2d 252, 257, 26 P.3d 903 (2001). A worker with a "temporary total disability" receives "time loss" benefits as a wage replacement benefit while the worker is temporarily incapacitated from performing work at gainful employment. RCW 51.32.090; Hubbard v. Dep't of Labor & Indus., 140 Wn.2d 35, 43, 992 P.2d 1002 (2000).

## Vocational Rehabilitation Program

In 2007, the legislature adopted RCW 51.32.099. LAWS OF 2007, ch. 72, § 2. RCW 51.32.099 is a pilot program designed "to create improved vocational outcomes for Washington state injured workers and employers." RCW 51.32.099(1)(a). The purpose of the pilot program is to permit injured workers to return to work.

> This pilot vocational system is intended to allow opportunities for eligible workers to participate in meaningful retraining in high-demand occupations, improve successful return to work and achieve positive

outcomes for workers, reduce the incidence of repeat vocational services, increase accountability and responsibility, and improve cost predictability. RCW 51.32.099(1)(a). The legislature directed the Department of Labor and Industries (Department) to implement the pilot program. RCW 51.32.099(1)(b).

When an injured worker files a claim, the Department must determine whether "vocational rehabilitation is both necessary and likely to make the worker employable at gainful employment." RCW 51.32.099(2)(b). If the Department makes that determination, the worker is referred to a vocational professional to develop a vocational rehabilitation plan. RCW 51.32.099(1)(b)(i). The Department must "review and approve the vocational plan." RCW 51.32.099(4)(a). If approved, the worker must elect either to participate in the plan, "Option 1," or not participate, "Option 2." RCW 51.32.099(4)(a), (b).

The decision to elect Option 2 means "[t]he worker declines further vocational services under the claim and receives an amount equal to six months of temporary total disability compensation under RCW 51.32.090." RCW 51.32.099(4)(b). The vocational funds set aside under RCW 51.32.099(3)(d) remain available to the worker for five years. RCW 51.32.099(4)(b). The Department "must issue an order as provided in RCW 51.52.050 confirming the option 2 election, setting a payment schedule, and terminating temporary total disability benefits effective the date of the order confirming that election." RCW 51.32.099(4)(b).[3]

After issuing the order confirming the election of Option 2, the Department "must thereafter close the claim." RCW 51.32.099(4)(b). The worker "is not entitled to further temporary total, or to permanent total, disability benefits except upon a showing of a

---

[3] Underlining in RCW 51.32.099 omitted throughout opinion.

worsening in the condition or conditions accepted under the claim such that claim closure is not appropriate." RCW 51.32.099(4)(b). If the claim is closed because the worker elected Option 2, the claim "may be reopened as provided in RCW 51.32.160,[4] but cannot be reopened for the sole purpose of allowing the worker to seek vocational assistance." RCW 51.32.099(4)(b). But if the worker shows "worsening," the Option 2 election "will be rescinded and the amount paid to the worker will be assessed as an overpayment." RCW 51.32.099(4)(b).

Worker's Compensation Injury and Vocational Rehabilitation Plan

On November 15, 2004, Danny McCaulley injured his back at work. McCaulley was diagnosed with a herniated disc at L5-S1.[5] McCaulley underwent an L5-S1 left-side hemilaminectomy. On October 4, 2005, the Department awarded McCaulley permanent partial disability benefits for category 3 permanent dorso-lumbar/lumbosacral impairments[6] and closed the claim. McCaulley returned to work as a boat hoist operator.

In November 2007, McCaulley filed an application to reopen his claim. The Department reopened McCaulley's claim effective November 28, 2007. On July 23,

---

[4] RCW 51.32.160(1)(a) provides, in pertinent part:

If aggravation . . . of disability takes place, the director may, upon the application of the beneficiary, made within seven years from the date the first closing order becomes final, or at any time upon his or her own motion, readjust the rate of compensation in accordance with the rules in this section provided for the same, or in a proper case terminate the payment.

[5] Lumbar spine fifth vertebrae, sacrum first vertebrae.

[6] WAC 296-20-280(3) defines a category 3 permanent dorso-lumbar and lumbosacral impairment as follows:

Mild low back impairment, with mild continuous or moderate intermittent objective clinical findings of such impairment but without significant X-ray findings or significant objective motor loss.

This and subsequent categories include: The presence or absence of reflex and/or sensory losses; the presence or absence of pain locally and/or radiating into an extremity or extremities; the presence or absence of a laminectomy or discectomy with normally expected residuals.

2008, McCaulley underwent a second hemilaminectomy. The Department then referred McCaulley to a vocational professional to develop a vocational rehabilitation plan. McCaulley participated in vocational testing. On February 27, 2014, McCaulley's attending physician, Dr. Dianna Chamblin, approved an analysis for the job of "office helper" if McCaulley could use an ergonomic chair and voice-activated software.

On May 19, 2014, the Department notified McCaulley that it approved the vocational rehabilitation plan for the job of office helper. The Department informed McCaulley, "You have a choice to participate in your training plan (Option 1) or receive a vocational award with retraining benefits (Option 2)." The Department stated that if McCaulley elects Option 2, his "time-loss benefits will end," he "will receive an award equal to six months of time-loss benefits," and he would have five years or up to $17,599.11 available to attend a licensed, accredited, or Department-approved school or training program.

On May 20, McCaulley filed a protest of the May 19 approval of the vocational rehabilitation plan. McCaulley asserted he lacked the basic literacy and computer skills to succeed in the retraining program and, instead, the Department should consider awarding permanent total disability benefits.

On June 11, Department Director Joel Sacks rejected the protest. "After reviewing the facts of this case, I have decided that vocational rehabilitation plan services are needed to help Mr. McCaulley return to work." Sacks said McCaulley "may now choose to proceed with the approved plan or select Vocational Option 2."[7] McCaulley did not appeal.

---

[7] Emphasis omitted.

5

Option 2 Election

On June 24, 2014, McCaulley submitted the "Retraining Plan Option Form."

McCaulley selected Option 2. McCaulley signed the form and affixed his initials next to

Option 2.

I have read and understand my rights and responsibilities.. If I don't return this form within 15 days, I understand that I must start my training plan and I can no longer select Option 2.

_____ I SELECT OPTION 1 and choose to participate in my training plan. I understand this means:
   * I am responsible for actively participating in my training plan and understand if I don't fully participate, my claim benefits can be suspended per RCW 51.32.099.
   * I will continue to receive time-loss benefits while I am participating in my training plan.

I SELECT OPTION 2 and choose not to participate in my training plan. I understand this means:
   * I can only choose Option 2 once in my lifetime.
   * My time-loss benefits will end.
   * I'll receive a vocational award equal to six months of my current time-loss benefits, less any overpayments or Washington State Department of Social and Health Services, Division of Child Support liens. I will receive a payment every two weeks until the award balance is paid in full or my eligibility ends.
   * I have 5 years and up to $17,599.11 in benefits for training at a licensed, accredited, or department approved school or training program.
   * I can use my training benefits for tuition, books, equipment, tools, fees, supplies, and licensed child or dependent care.

_____
Worker's Printed Name

_____           6/24/14
Worker's Signature                                 Date

Page 3 of 4          FILE COPY          (VR49;R1;M1)

On July 7, the Department issued a "Notice of Decision" confirming the decision

of McCaulley to elect Option 2. The Notice of Decision states:

> You have selected Option 2 and chosen not to participate in your training plan. You are entitled to disability benefits through 07/07/2014.
>
> Your vocational award less any deductions will be paid out in biweekly payments until the full amount has been paid.

You have up to five years, starting 07/07/2014, to spend up to $17,599.11 on programs or courses at any accredited or licensed institution or program approved by the department.

On July 9, the Department notified McCaulley that it approved his Option 2 election. The Department determined that he was entitled to a vocational award equivalent to six months of time-loss benefits of $10,099.80. McCaulley received biweekly payments from July 21, 2014 through January 5, 2015.

The Department closed McCaulley's claim on August 6, 2014. The order closing the claim states McCaulley's permanent partial disability award is for "category 4 permanent dorso-lumbar and/or lumbosacral impairments."

Appeal of the Election of Option 2 and Closure of the Claim

On August 20, 2014, McCaulley filed a notice of appeal to the Board of Industrial Insurance Appeals (Board) of the July 7 Notice of Decision confirming his election of Option 2 and the August 6 decision closing the claim. McCaulley asserted he was entitled to permanent total disability benefits without showing worsening of his condition under the claim.

The Department filed a motion for summary judgment. The Department argued that under RCW 51.32.099(4)(b), McCaulley could seek permanent total disability benefits only if he showed "worsening" of the accepted condition such that the decision to close the claim was inappropriate.

An industrial appeals judge (IAJ) held a hearing on the motion for summary judgment. On July 16, 2015, the IAJ issued a "Proposed Decision and Order" affirming the July 7 order confirming McCaulley's Option 2 election and the August 6 order

closing his claim. The IAJ concluded, as a matter of law:

> Because Mr. McCaulley elected "Option 2" benefits, he is not entitled to time-loss [(temporary total disability)] compensation or pension [(permanent total disability)] benefits, because he did not show or even contend that the conditions accepted under the claim have worsened, such that claim closure is inappropriate. RCW 51.32.099(4)(b).

McCaulley appealed to the Board. The Board adopted the Proposed Decision and Order as its final order.

McCaulley filed an appeal of the Board's decision in superior court. The court affirmed the Board's Decision and Order. The superior court entered findings of fact and conclusions of law and judgment in favor of the Department. The court concluded:

> Under RCW 51.32.099(4)(b), a worker who selects option 2 benefits may not receive additional temporary total disability benefits or permanent total disability benefits after having made that selection, unless the worker demonstrates that there has been a "worsening" such that "claim closure is not appropriate."

McCaulley appeals the decision of the superior court.

Standard of Review

In an appeal from the Board, the superior court acts in an appellate capacity and reviews the decision de novo "based solely on the evidence and testimony presented to the Board." Leuluaialii v. Dep't of Labor & Indus., 169 Wn. App. 672, 677, 279 P.3d 515 (2012); Ruse v. Dep't of Labor & Indus., 138 Wn.2d 1, 5, 977 P.2d 570 (1999).

RCW 51.52.140 governs our review of the superior court decision. RCW 51.52.140 states that an "[a]ppeal shall lie from the judgment of the superior court as in other civil cases." See also Rogers v. Dep't of Labor & Indus., 151 Wn. App. 174, 179-81, 210 P.3d 355 (2009). We review the superior court decision on summary judgment de novo. Pearson v. Dep't of Labor & Indus., 164 Wn. App. 426, 431, 262 P.3d 837

(2011). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

RCW 51.32.099(4)(b)

McCaulley argues the superior court erred in interpreting RCW 51.32.099(4)(b) to mean he cannot pursue permanent total disability benefits unless he shows worsening.

The meaning of a statute is a question of law we review de novo. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002); W. Plaza, LLC v. Tison, 184 Wn.2d 702, 707, 364 P.3d 76 (2015). The fundamental objective in construing a statute is to ascertain and give effect to the intent of the legislature. City of Spokane v. Rothwell, 166 Wn.2d 872, 876-77, 215 P.3d 162 (2009).

Statutory interpretation begins with the plain meaning of the statute. Nat'l Elec. Contractors Ass'n, Cascade Chapter v. Riveland, 138 Wn.2d 9, 19, 978 P.2d 481 (1999); Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). We discern plain meaning from the ordinary meaning of the language, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole. Lake, 169 Wn.2d at 526. We " 'must not add words where the legislature has chosen not to include them.' " Lake, 169 Wn.2d at 526 (quoting Rest. Dev., Inc. v. Cananwill, Inc., 150 Wn.2d 674, 682, 80 P.3d 598 (2003)).

If the plain language of the statute is susceptible to more than one reasonable interpretation, the statute is ambiguous. Birgen v. Dep't of Labor & Indus., 186 Wn. App. 851, 858, 347 P.3d 503 (2015). A statute " 'is not ambiguous simply because different interpretations are conceivable.' " Nelson v. Dep't of Labor & Indus., 198 Wn. App. 101, 110, 392 P.3d 1138 (2017) (quoting Hi-Way Fuel Co v. Estate of Allyn, 128

Wn. App. 351, 358, 115 P.3d 1031 (2005)). If, after we review the plain meaning, the statute is unambiguous, our "inquiry is at an end." Lake, 169 Wn.2d at 526.

Under the IIA, we must resolve doubts and ambiguities in the language of the IIA in favor of the injured worker. RCW 51.12.010; Cockle v. Dep't of Labor & Indus., 142 Wn.2d 801, 811, 16 P.3d 583 (2001). But this provision applies only when doubts or ambiguities exist that must be resolved, and we will not use the liberal construction requirement to support a " 'strained or unrealistic interpretation' " of the statute. Birgen, 186 Wn. App. at 862 (quoting Senate Republican Campaign Comm. v. Pub. Disclosure Comm'n, 133 Wn.2d 229, 243, 943 P.2d 1358 (1997)).

When enacted in 2007, RCW 51.32.099(4)(b) did not explicitly limit a worker's ability to pursue permanent total disability benefits or further temporary total disability benefits after the worker elects Option 2. LAWS OF 2007, ch. 72, § 2.

In In re Ackley, No. 09 11392, 2010 WL 4152054 (Wash. Bd. of Indus. Ins. Appeals Aug. 19, 2010), the Board addressed whether a worker could pursue permanent total disability benefits after electing Option 2.[8] In Ackley, the worker elected Option 2 and the Department closed the claim. Ackley, 2010 WL 4152054, at *4, *1. The worker appealed the order closing the claim. Ackley, 2010 WL 4152054, at *1. The Board concluded RCW 51.32.099 was ambiguous as to whether a worker who elects Option 2 can later receive permanent total disability benefits. Ackley, 2010 WL 4152054, at *5-*6. Because RCW 51.32.099 did not specifically state a worker who elects Option 2 cannot later pursue permanent total disability benefits, the Board held

---

[8] Significant Board decisions are treated as persuasive nonbinding authority. Birrueta v. Dep't of Labor & Indus., 186 Wn.2d 537, 548, 379 P.3d 120 (2016).

the worker could pursue permanent total disability benefits. Ackley, 2010 WL 4152054, at *5.

> [T]here is nothing in the statute that indicates a worker is not eligible for pension benefits after selecting Option 2. If the statute were to operate in that fashion, we believe the statute should explicitly state that the Option 2 selection is an irrevocable decision that precludes an award for permanent total disability. The statute should specifically state that a worker cannot appeal the order closing the claim and assert entitlement to benefits as a totally and permanently disabled worker.

Ackley, 2010 WL 4152054, at *5.

In 2011, the legislature amended RCW 51.32.099 to make clear that a worker who elects Option 2 cannot later seek permanent total disability benefits unless the worker can show "worsening" in the condition that was accepted under the claim such that claim closure is not appropriate. LAWS OF 2011, ch. 291, § 2. As amended, RCW 51.32.099(4)(b) states:

> A worker who elects option 2 benefits . . . is not entitled to further temporary total, or to permanent total, disability benefits except upon a showing of a worsening in the condition or conditions accepted under the claim such that claim closure is not appropriate, in which case the option 2 selection will be rescinded and the amount paid to the worker will be assessed as an overpayment. A claim that was closed based on the worker's election of option 2 benefits may be reopened as provided in RCW 51.32.160, but cannot be reopened for the sole purpose of allowing the worker to seek vocational assistance.

When the legislature changes the language of a statute, we presume the meaning changes as well. Bob Pearson Constr., Inc. v. First Cmty. Bank of Wash., 111 Wn. App. 174, 179, 43 P.3d 1261 (2002). We hold that by adding the new language to RCW 51.32.099(4)(b) stating "[a] worker who elects option 2 benefits . . . is not entitled to further temporary total, or to permanent total, disability benefits except upon a

11

showing of a worsening in the condition," the legislature intended to change the meaning of the statute.[9]

The plain language of RCW 51.32.099(4)(b) is unambiguous. RCW 51.32.099(4)(b) explicitly precludes a worker from pursuing permanent total disability benefits after selecting Option 2 unless the worker shows worsening of the accepted condition such that claim closure is not appropriate. There is no dispute McCaulley does not argue his condition has worsened. Under the plain language of the statute, absent a showing of worsening under the claim, he is not entitled to permanent total disability benefits.[10]

McCaulley argues as a matter of public policy it is unfair to require the worker to engage in vocational rehabilitation before the worker may pursue permanent total disability benefits. Public policy arguments "are more properly addressed to the Legislature, not to the courts." Blomster v. Nordstrom, Inc., 103 Wn. App. 252, 258, 11 P.3d 883 (2000); John Doe A v. Wash. State Patrol, 185 Wn.2d 363, 384, 374 P.3d 63 (2016); State v. Costich, 152 Wn.2d 463, 479, 98 P.3d 795 (2004); Triplett v. Dep't of Soc. & Health Servs., 166 Wn. App. 423, 433, 268 P.3d 1027 (2012); Donohoe v. State, 135 Wn. App. 824, 851 n.20, 142 P.3d 654 (2006); Quadrant Corp. v. Growth Mgmt. Hr'gs Bd., 154 Wn.2d 224, 247, 110 P.3d 1132 (2005); Burkhart v. Harrod, 110 Wn.2d 381, 385, 755 P.2d 759 (1988); State v. Brown, 94 Wn. App. 327, 342, 972 P.2d 112

---

[9] We presume the legislature was aware of the Board's decision in Ackley. See Bob Pearson, 111 Wn. App. at 179 (the court presumes the legislature is aware of the case law construing statutes and acts consistently absent a clear intent to do otherwise).

[10] Nonetheless, McCaulley argues he may pursue permanent total disability benefits because he appealed the order confirming his Option 2 election. Nothing in the statute supports McCaulley's interpretation.

(1999); <u>Cazzanigi v. Gen. Elec. Credit Corp.</u>, 132 Wn.2d 433, 449, 938 P.2d 819 (1997).

We affirm.

WE CONCUR:

_Schindler, J._

_Verellen, J._

_Appelwick, C.J._